IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Patrick R. RUSSELL, Attorney at Law.

Supreme Court

*No. 97–3619–D. Filed March 12, 1998.*

(Also reported in 574 N.W.2d 247.)

¶ 1.  PER CURIAM.  We review, pursuant to SCR 21.09(3m),[1] the stipulation of Attorney Patrick R.

---

[1] SCR 21.09 provides, in pertinent part:

Russell and the Board of Attorneys Professional Responsibility (Board) concerning Attorney Russell's professional misconduct. That misconduct consisted of numerous instances over a period of several years of misappropriating funds belonging to the law firm where he was employed, misrepresenting his personal expenses as law firm expenses and obtaining reimbursement for them, obtaining employee benefits to which he was not entitled, and receiving and retaining fees for legal work he performed but did not report to the law firm. The parties stipulated that the discipline imposed for that misconduct be an 18-month license suspension.

¶ 2.   We treat a lawyer's misappropriation of law firm funds as we do misappropriation of funds belonging to a client. *Disciplinary Proceedings Against Casey*, 174 Wis. 2d 341, 496 N.W.2d 94 (1993). "In each case, the lawyer violates the basic professional duty of trust, not only as attorney but also as fiduciary, and a refusal to fulfill that responsibility will be disciplined severely." *Id.,* 342. Over several years, Attorney Russell engaged in a scheme to take money to which he was not entitled from the law firm employing him. That

Procedure.

. . .

(3m) The board may file with a complaint a stipulation by the board and the respondent attorney to the facts, conclusions of law and discipline to be imposed. The supreme court may consider the complaint and stipulation without appointing a referee. If the supreme court approves the stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline. If the supreme court rejects the stipulation, a referee shall be appointed pursuant to sub. (4) and the matter shall proceed pursuant to SCR chapter 22. A stipulation that is rejected has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the board's prosecution of the complaint.

scheme included his falsifying and having another employee falsify law firm financial records. Under the circumstances stipulated, we determine that the 18-month license suspension is the appropriate discipline to impose for that professional misconduct.

¶ 3. Attorney Russell was admitted to the practice of law in Wisconsin in 1980 and at the time relevant to this proceeding practiced in Milwaukee. He currently resides in Menomonee Falls and is not engaged in the practice of law. He has not been the subject of a prior disciplinary proceeding. The parties stipulated to the following facts.

¶ 4. Beginning in 1985, Attorney Russell was a partner-shareholder and the treasurer of a Milwaukee law firm. In July, 1995, while he was on vacation, members of the firm reviewed some of the firm's disbursement accounts. When the firm's bookkeeper telephoned him that his partners were looking at the books, Attorney Russell called the firm and resigned. The law firm expected Attorney Russell to return to work and wind down his practice, but soon after his return from vacation, it was discovered that the bookkeeper had been embezzling from the firm. The bookkeeper was fired in August of 1995, and, because of its suspicions of Attorney Russell's involvement in the embezzlement, the firm promptly dismissed him. The bookkeeper had asserted that Attorney Russell knew of firm checks the bookkeeper had written to himself in 1995, but Attorney Russell has denied knowledge of the embezzlement.

¶ 5. In March, 1995, while setting up an office for the firm in another city, Attorney Russell requested and received a check from the bookkeeper for $2500, ostensibly to purchase equipment and desks for that office. Attorney Russell deposited that check into his

490

personal checking account and did not use the money to buy equipment and supplies for the firm's office. Some six weeks later, the balance in his personal checking account was just over $800. The $2500 payment he received was never listed as an advance on the firm's books but was accounted for by the bookkeeper as a miscellaneous office expense. Attorney Russell has reimbursed the firm for that amount.

¶ 6.   In July, 1995, Attorney Russell signed a law firm check to himself for $1100, characterizing $1000 of the amount as an advance taken in anticipation of a vacation. He neither obtained preapproval for the personal disbursement, as required by the law firm's rules, nor did he discuss the propriety of the personal advance with any attorney in the firm. He obtained the check from the bookkeeper, who accounted for it not as an advance but as a miscellaneous office expense.

¶ 7.   In 1994, Attorney Russell obtained the law firm's payment of a $1687 invoice for computer equipment he bought for personal use. On his instructions, the bookkeeper issued the check to the vendor and debited it as a miscellaneous office expense. Attorney Russell had not discussed or sought preapproval of the expenditure with the law firm's attorneys, and the expenditure did not appear as a prepaid bonus on the yearend accounts. The following month, Attorney Russell had the bookkeeper issue him a law firm check for $2000 for the purchase of computer hardware. This was reflected as a prepaid bonus, but Attorney Russell had not discussed or sought preapproval of what amounted to an interest free loan of law firm funds to purchase a computer for a relative.

¶ 8.   From 1993 to mid–1995, Attorney Russell used his law firm credit card for payment of expenses incurred for other than law firm business. For example,

he allowed the firm's bookkeeper to use it to charge two vacation trips, for which Attorney Russell has made reimbursement. He used the card himself to make personal purchases that were never repaid and did not appear as advances or prepaid bonuses. In April, 1995, he purchased $677 worth of video equipment for personal use, listed it as office expense, and had the bookkeeper pay the bill and debit the law firm's account. In 1994, his personal expenses paid with the firm's credit card totaled $2773; the total for the first-half of 1995 was $1616.50. In 1993, he charged purchases totaling $548.14. Attorney Russell had not discussed or obtained preapproval for those charges but had the bookkeeper pay them. He knew that none of the personal expenses he charged with the credit card were deducted from his payroll checks or accounted for as prepaid bonuses, and he did not reimburse the firm for them.

¶ 9.   After he left the law firm, it was discovered that Attorney Russell had provided legal services in matters he did not report to the law firm, despite the requirement that any legal fees received be turned over to the firm. At least two such files were identified, as they had not been assigned law firm file numbers. Between November, 1990 and early February, 1991, Attorney Russell received three payments totaling approximately $1850 from a lawyer relative as a portion of legal fees generated in two cases. Attorney Russell endorsed those payments and deposited them into his personal bank account. He had neither sought nor received permission from his firm to retain fees from work he performed outside the firm.

¶ 10.   Between 1993 and 1995, Attorney Russell received reimbursements under an employee benefit plan to which he was not entitled. He received tax-free

reimbursements of almost $9000 in 1993, over $9000 in 1994, and over $5000 in 1995, the majority of which were for dependent care expenses. However, at the time those expenses were incurred, Attorney Russell's wife was not employed and did not otherwise qualify for coverage under the benefit plan. In addition, many of the checks Attorney Russell had written to the child care providers coincided with weekend evenings and days, consistent with non-work-related baby-sitting services.

¶ 11. In May, 1995, Attorney Russell was informed by persons at the firm and a representative of the employment benefit company that he was not entitled to reimbursement of child care expenses for the reason that his wife did not qualify. Nonetheless, he continued to claim and receive tax-free reimbursements from the plan for at least $1269 for child care expenses in June and July, 1995. He also received reimbursements exceeding his payroll deductions in 1994 and 1995, which he was not entitled to do. Also, in June, 1994, Attorney Russell twice claimed reimbursement for the same $172 charge for dental services rendered to his children.

¶ 12. We accept the stipulation of the parties in respect to the facts, as well as their stipulation that Attorney Russell's conduct involved dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[2] We determine that the appropriate discipline to impose for his misconduct is the suspension of

---

[2] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:
. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

his license to practice law for a period of 18 months. As a condition of reinstatement of his license following that suspension, Attorney Russell will be required to demonstrate, pursuant to SCR 22.28(4)(k),[3] that he has made restitution to the law firm for its funds that he misappropriated or provide a satisfactory explanation why he has not done so.

¶ 13.   IT IS ORDERED that the license of Patrick R. Russell to practice law in Wisconsin is suspended for 18 months, commencing April 27, 1998.

¶ 14.   IT IS FURTHER ORDERED that Patrick R. Russell comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law has been suspended.

---

[3] SCR 22.28 provides, in pertinent part:

**Reinstatement.**

. . .

(4) The petition for reinstatement shall show that:

. . .

(k) The petitioner has made restitution or settled all claims from persons injured or harmed by petitioner's misconduct or, if the restitution is not complete, petitioner's explanation of the failure or inability to do so.