IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Matthew C. SIDERITS, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Matthew C. SIDERITS, Respondent-Appellant.

Supreme Court

*No. 2011AP259–D. Oral argument October 5, 2012.
—Decided January 4, 2013.*

2013 WI 2

(Also reported in 824 N.W.2d 812.)

90

For the respondent-appellant, there were briefs filed by *Raymond Dall'Osto, Gimbel, Reilly, Guerin & Brown, LLP,* Milwaukee, and oral argument by *Raymond Dall'Osto.*

For the Office of Lawyer Regulation, there was a brief by *Anne MacArthur, Anne MacArthur Law LLC,* Madison, and oral argument by *Anne MacArthur.*

¶ 1. PER CURIAM. In this disciplinary proceeding, the referee concluded that the Office of Lawyer Regulation (OLR) had proven violations on all five counts contained in the complaint filed by the OLR. Based on those violations, the referee recommended that Attorney Matthew C. Siderits' license to practice law in Wisconsin be suspended for 18 months. Attorney Siderits appeals from the referee's report and recommendation.

¶ 2. After independently reviewing the record, we determine that the facts as found by the referee demonstrate violations of the Rules of Professional Conduct for all five counts alleged by the OLR. We conclude that Attorney Siderits' professional misconduct requires a 12–month suspension of his license to practice law in this state. We further conclude that Attorney Siderits should be required to pay the full costs of this proceeding, which were $18,916.68 as of October 22, 2012.

¶ 3. On February 7, 2011, the OLR filed a five-count complaint against Attorney Siderits. This court appointed Attorney James W. Mohr, Jr. as referee. The referee held an evidentiary hearing on October 24 and October 25, 2011. Both parties submitted post-hearing briefs.

¶ 4. The referee submitted a report containing his findings of fact, conclusions of law, and a recommendation for discipline. The findings of fact and conclusions of law are summarized below.

92

¶ 5. When reviewing the referee's report, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. *See In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125.

¶ 6. Attorney Siderits was admitted to the practice of law in Wisconsin in 1996. A Milwaukee firm named Otjen, Van Ert, & Weir ("the Firm") hired Attorney Siderits upon his graduation from law school and made him a shareholder on January 1, 2004. Attorney Siderits was also the Treasurer of the Firm, worked with the Firm's bookkeeper, and as Treasurer was responsible for approving all final compensation distributions to shareholders of the Firm. Attorney Siderits worked primarily in the area of workers compensation defense. He remained Treasurer up until the Firm terminated his employment in June 2009.

¶ 7. The Firm had a compensation system for shareholders which provided for a bonus if a shareholder's billings exceeded 1,800 hours for that year. Lawyers at the Firm typically entered their billable hours in one of two ways. Some members of the Firm filled out daily "time sheets" and their assistants entered the billable hours into the Firm's computerized billing system. Other lawyers chose to enter their billable time directly into the Firm's computerized billing system. Toward the end of each calendar year, the shareholders met to review each shareholder's billable hours as recorded in the Firm's computerized billing system to determine whether the partner was likely to meet the 1,800 hour bonus target. The Firm closed its books for recording billable time at the end of December. Once the books were closed, the Firm's

partnership determined which partners were entitled to receive the bonus and distributed any bonuses just after the New Year. As Treasurer of the Firm, Attorney Siderits reviewed each of the computations and signed off on the final distributions. As a shareholder, Attorney Siderits participated in each of these year-end meetings and in bonus distributions for each year he was a partner from 2004 through his termination in 2009.

¶ 8.    Attorney Siderits knew that his eligibility for a bonus hinged on recording 1,800 billable hours in the Firm's computerized billing program. His actions in 2004 illustrate his attentiveness toward the 1,800 hour bonus target. That year, Attorney Siderits' first year as a partner, his total billings fell slightly short of 1,800 hours. Attorney Siderits nevertheless asked the Firm to allow him to participate in the bonus pool because he had spent a considerable amount of time working on the Firm's computer system. The members of the Firm agreed and credited him an additional 44 hours of "firm" time for his computer work, thus bringing his total hours in excess of 1,800 for 2004, and allowing him to participate in the bonus program for that year.

¶ 9.    In both 2007 and 2008, Attorney Siderits allegedly recorded in excess of 1,800 hours (1,803.3 hours in 2007 and 1806.3 hours in 2008). Because his recorded billable hours exceeded 1,800 hours, Attorney Siderits participated in the bonus system in 2007 and 2008, earning an additional $23,451.12 bonus in early 2008 for his 2007 billings and $23,526.92 in early 2009 for his 2008 billings. Combined, these bonuses totaled $46,978.04.

¶ 10.    After the Firm paid Attorney Siderits each of the bonuses, but before the Firm mailed his bills to his clients, Attorney Siderits reduced, or "wrote-down," certain of his billable hours for the years for which the

bonuses were paid. In early 2008 Attorney Siderits wrote-down 29.2 hours of time from his 2007 billings without notifying the Firm. These write-downs caused Attorney Siderits' 2007 billables to drop about 25 hours below the 1,800 level. In early 2009 Attorney Siderits wrote-down 231.9 hours from his 2008 billings, again without notifying the Firm. These write-downs caused Attorney Siderits' 2008 billables to drop below 1,600 hours.

¶ 11.   As mentioned, Attorney Siderits made his biggest write-downs in early 2009, from his 2008 billings. Many of the write-downs were for a case identified in the record as Matter "A"—a brief in a workers compensation matter that Attorney Siderits mailed to the Labor and Industry Review Commission (LIRC) on January 9, 2009. Although the brief spanned only 17 pages, Attorney Siderits billed a total of 140 hours on this brief in 2008. Of that amount, Attorney Siderits billed 105.7 hours in November and December 2008— even though the brief was not due until January 9, 2009; even though the case already had been briefed once before to an administrative law judge (ALJ); and even though Attorney Siderits took a significant portion of the final brief directly from a memorandum prepared by an associate, who billed separately. Attorney Siderits recorded 9.1 hours on the brief on Christmas Eve day 2008. In February and March of 2009, Attorney Siderits deleted all 105.7 hours that he had billed on the brief in November and December.

¶ 12.   Attorney Siderits made similar changes to other matters billed in 2008, identified in the record as Matters "B" through "J." For example, Matter "H" had a time entry of 80 hours entered into the system on December 10, 2008, for work allegedly performed over

95

ten months earlier, on January 23, 2008, virtually all of which was deleted on January 30, 2009.

¶ 13. The total of all time entered by Attorney Siderits into the billing system in the last three months of 2008 was 239.6 hours; the total amount of time deleted in the first three months of 2009 was 231.9 hours. Thus, only 7.7 hours of all hours that Attorney Siderits recorded in the last three months of 2008 were actually charged to a client.

¶ 14. Attorney Siderits engaged in similar, but not as extensive, write-downs for billings in 2007. He entered 1,803.3 hours himself into the billing system for 2007, but after his write-downs, his actual cumulative total for that year was 1.774.1 hours.

¶ 15. It is undisputed that Attorney Siderits personally entered all of these charges directly into the Firm's computer system (that is, he did not work through his assistant or the bookkeeper) and that he likewise deleted all of these time charges himself, again without notifying his assistant or the bookkeeper. This was not the typical manner of editing bills at the Firm. The Firm's bookkeeper testified that the normal practice at the Firm was for her to generate written "pre-bills" at the first of each month and pass them out to the attorneys. The attorneys would then edit and return them to her. She would make any necessary changes and produce the final bill. She said that Attorney Siderits was always very prompt in returning the written pre-bills with any changes. She was not aware that Attorney Siderits was revising bills himself within the system.

¶ 16. In 2009 the Firm discovered Attorney Siderits' 2007 and 2008 billing conduct and terminated him. He forfeited his interest in the Firm's profit sharing plan. He also repaid the Firm a total of $60,000

to compensate the Firm for the bonuses to which he was not entitled and for other unspecified damages claimed by the Firm.

¶ 17. This proceeding followed. The OLR's complaint contained the following counts:

• Count One alleged that Attorney Siderits' purported misrepresentation of billable hours for 2007 violated SCR 20:8.4(c).[1]

• Count Two alleged that the same misrepresentation in 2008 violated SCR 20:8.4(c).

• Count Three alleged that by making changes in the Firm's accounting system and deleting billable time without advising any other members of the Firm, Attorney Siderits violated SCR 20:8.4(c).

• Count Four alleged that by failing to disclose that the write-downs rendered him ineligible for the bonuses in 2007 and 2008, Attorney Siderits violated SCR 20:8.4(c).

• Count Five alleged that by misrepresenting his billable time in order to receive $46,978.04 in bonuses to which he was not entitled, and by circumventing the Firm's bookkeeper to prevent disclosure of his conduct, Attorney Siderits violated his fiduciary duty owed to his Firm and his duty of honesty in his professional dealings with the Firm in violation of SCR 20:8.4(f).[2]

¶ 18. In his answer to the OLR's complaint, Attorney Siderits made several admissions. He admitted

---

[1] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[2] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

that he was an officer and shareholder of the Firm. He admitted that the amounts he billed in the Firm's computer system for 2007 and 2008 were as described above. He admitted that the Firm's bonus system worked as described above. He admitted that he did not advise any of the other shareholders in the Firm that he had written down his time. He admitted that the Firm discharged him for allegedly being paid compensation for which he may not have been entitled. He admitted that attorneys have a fiduciary duty to their law firms and a duty of honesty in the professional dealings with their law firms.

¶ 19.  Attorney Siderits denied any allegations of wrongdoing in his answer. He claimed that, at the time he made the write-downs, he did not know that he thereby became ineligible for the bonuses. He denied that his actions constituted misconduct. He noted that no clients of the Firm, or the Firm itself, suffered any financial loss and that he and the Firm have entered into a settlement agreement resolving all disputes between them. He alleged that this case was merely a matter of a contractual dispute with the Firm over compensation and should not be viewed as an ethical issue.

¶ 20.  Attorney Siderits testified at the ensuing disciplinary hearing before the referee. Attorney Siderits admitted that he did not actually bill 1,800 hours in either 2007 or 2008. He also admitted that he was not entitled to receive the bonuses in question, but contended he did not know, at the time he wrote-down the time in the computer system, that the effect would be to disqualify him from the bonuses. He also admitted that he never told anyone else in the Firm that he wrote-down his time for either 2007 or 2008. He admitted that he entered all of the write-downs directly into the

98

computer system so that neither his assistant nor the bookkeeper was aware of the write-downs. He agreed that he wrote-down about 29 hours in 2007 and about 230 hours in 2008. He claimed it took him 140 hours to produce the 17–page brief in Matter "A" even though, in his estimation, an average brief to LIRC normally would take about 20 to 25 hours. He denied inflating his time when billing Matter "A" and claimed that the case involved an unusually difficult workers compensation defense claim and that he was under pressure from his client to win. Attorney Siderits could not explain why many of the hours he entered in 2008 were entered well after the claimed date of service.

¶ 21.　The referee was not persuaded by Attorney Siderits' defense. He wrote in his report:

> The issue in this case really wasn't about the facts of the write downs. They were undisputed. The issue is whether they were intentional and whether OLR has met its burden of proof that Siderits engaged in conduct "involving dishonesty, fraud, deceit or misrepresentation." Siderits argues that he, and all attorneys, are justified in writing down time on their bills, and in the exercise of that right, he simply did not realize that he fell below the 1,800 hour threshold for the bonus payments which he received.

> In my opinion, that position simply does not square with reality. If there had been an occasional write down here or there, and if they had been minimal, I do not think this matter would ever have been charged. The size of the write downs, the number of write downs, and their timing, all point to the obvious conclusion that Siderits was manipulating his billing records for the sole purpose of achieving a bonus. That conclusion is inescapable. To ignore the numerous and substantial transactions put into evidence is impossibly unrealistic.

¶ 22. The referee believed the most damning evidence of wrongdoing was Attorney Siderits' time-recording for 2008. Focusing on Attorney Siderits' billings for Matter "A," the referee wrote:

> [I]t is inconceivable to me that an experienced attorney could expect anyone to believe that he spent 140 hours on a relatively straightforward brief; especially since the matter had been fully briefed previously and the new brief was substantially based on the work of an associate. His protestations to the contrary are simply not credible. Furthermore, his time on that brief was entered late in the year, at times one would not normally expect an attorney to be working on the brief, in large quantities, and entered days and weeks after the work was allegedly performed. The same amounts were then routinely deleted following the end of the year, without following the normal procedure of deleting them on the paper pre-bills. Siderits entered the computer system himself, telling no one, and deleted all of the time that he entered. The time he ultimately billed the client was within the realm of reason, and consistent with what two other attorneys testified should be the time for such a brief. He never discussed with his partners any of the massive write downs that he did on Matter "A."

¶ 23. The referee wrote that this same pattern existed for Attorney Siderits' other write-downs for 2008:

> Again, these were time entries, made after the fact and then written down after the bonus was paid, bypassing the traditional system of working through the book-keeper. This clandestine course of conduct leads to no other reasonable conclusion but that Siderits was inflating time to barely get himself over the 1,800 hour mark, knowing that the time would never be billed to clients.

¶ 24. The referee also wrote that while Attorney Siderits' write-downs for 2007 were lesser in scope, "viewed from the perspective of what was done in 2008, the same conclusion [of misconduct] is inescapable." Although in 2007 Attorney Siderits was closer to achieving the 1,800 billable hour goal, and therefore he did not have to inflate and write-down as much time, he engaged in precisely the same conduct to achieve the same result. The referee wrote, "I might have difficulty finding a pattern of dishonesty based upon 2007 alone. However, when viewed from the perspective of what happened in 2008, the same conclusion about 2007 becomes perfectly obvious."

¶ 25. The referee ultimately determined that Attorney Siderits committed all five counts of alleged misconduct. With respect to the discipline to be imposed, the referee found the following aggravating factors to be present: a dishonest or selfish motive, a pattern of misconduct, and a refusal to acknowledge the wrongful nature of the conduct. The referee found the following mitigating factors to be present: the absence of a prior disciplinary record, a timely good faith effort to make restitution or to rectify the consequences of misconduct, a cooperative attitude toward the disciplinary proceedings, and good character or reputation. The referee ultimately recommended an 18–month suspension. He did not comment on costs. He did not recommend restitution, nor did the OLR request it, in light of Attorney Siderits' $60,000 payment to the Firm following his termination.

¶ 26. Attorney Siderits appeals from the referee's report and recommendation. He first disputes the referee's determinations that he violated SCR 20:8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and that he violated SCR

20:8.4(f) by breaching the conduct rule set forth in precedent describing a lawyer's fiduciary duty to his law firm and his duty of honesty in his professional dealings with it. *See, e.g., In re Disciplinary Proceedings Against Shea,* 190 Wis. 2d 560, 527 N.W.2d 314 (1995). Attorney Siderits argues that he is innocent of such misconduct because the Firm lacked a written policy limiting his ability to write-down his bills.

¶ 27.  We disagree. As the referee recognized, this case does not turn on the bare fact that Attorney Siderits wrote-down his time; if Attorney Siderits had made occasional, modest write-downs which did not affect his eligibility for a bonus, this misconduct case would not exist. At issue here is whether Attorney Siderits was manipulating his billing records for the sole purpose of achieving a bonus. The answer to this question, according to the referee, is an unequivocal yes; the referee determined that Attorney Siderits' arguments to the contrary were not credible—a determination which we will not disturb. *See In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, ¶ 53, 279 Wis. 2d 583, 694 N.W.2d 910. It is obvious that with or without a written Firm policy, misappropriating Firm funds through billing sleight of hand is inimical to the best interests of the Firm, the public, and the profession, and, as such, constitutes misconduct.

¶ 28.  Attorney Siderits next argues that his due process rights have been violated by this proceeding in two respects. First, he claims that in the absence of a formal Firm policy governing write-downs, he reasonably could not have known his actions to be wrong. Second, he argues that he was unaware of such cases as *In re Disciplinary Proceedings Against Shea,* 190 Wis. 2d 560, 527 N.W.2d 314 (1995), which holds that a

lawyer has a fiduciary duty to his law firm, or *In re Disciplinary Proceedings Against Casey,* 174 Wis. 2d 341, 496 N.W.2d 94 (1993), in which this court pledged to treat lawyers' misappropriation of law firm funds no differently than misappropriation of client funds.

¶ 29.  We reject these arguments. We already have commented on the absolving effect of the absence of a formal Firm policy governing write-downs:  none. Once again, this case does not turn on the bare fact that Attorney Siderits wrote-down his time; this case is about Attorney Siderits abusing his write-down discretion and lying to his law partners in order to collect almost $47,000 in bonuses to which he was not entitled. Attorney Siderits cannot seriously contend that firms must have a written policy forbidding stealing and lying before a misconduct charge for one of these actions can be sustained. As to Attorney Siderits' ignorance-of-the-law defense, we emphatically reject it. To allow an ignorance-of-the-law excuse in lawyer ethics cases would encourage and reward indifference to the ethics code and the cases interpreting it, a pernicious outcome. In any event, the injunction against stealing from one's own law firm is not an abstract one, and this court has stated it clearly and repeatedly. *In re Disciplinary Proceedings Against Russell,* 216 Wis. 2d 488, 489, 574 N.W.2d 247 (1998) ("We treat a lawyer's misappropriation of law firm funds as we do misappropriation of funds belonging to a client") (citing *Casey*); *In re Disciplinary Proceedings Against Olson,* 216 Wis. 2d 483, 484, 574 N.W.2d 245 (1998) ("We have stated on prior occasion that a lawyer's misappropriation of funds belonging to a law firm where that lawyer is employed is to be treated no differently than misappropriation of

funds belonging to the lawyer's client") (citing *Casey*). Attorney Siderits should have known better.

¶ 30.   Attorney Siderits also challenges the recommended sanction. He claims that the referee, in recommending an 18–month suspension, was laboring under the misimpression that an 18–month suspension was the mandatory minimum suspension under our case law for the misconduct at issue here. He claims that if any sanction is necessary, it should either be a public reprimand or a two- to six-month suspension.

■

¶ 31.   We disagree on both counts. The referee clearly, and correctly, believed that an 18–month suspension was within the wide range of sanctions imposed in previous, arguably similar misappropriation cases. *In re Disciplinary Proceedings Against Peterson*, 2006 WI 41, 290 Wis. 2d 74, 713 N.W.2d 101 (two-year license suspension justified when lawyer misappropriated over $26,000 in client funds, pawned law firm property, and admitted to criminal use of cocaine); *In re Disciplinary Proceedings Against Schaller*, 2006 WI 40, 290 Wis. 2d 65, 713 N.W.2d 105 (two-year license suspension justified when lawyer improperly converted at least $4,290.85 from payments made by various clients, failed to report those funds as income on his federal and state income tax returns, and engaged in the practice of law while his license was suspended); *In re Disciplinary Proceedings Against Shea*, 190 Wis. 2d 560, 527 N.W.2d 314 (1995) (six-month license suspension justified when lawyer kept a $75,000 legal fee which should have been turned over to his law firm, misrepresented to his partners that he had not sent a client an invoice for services and had not been paid, and misrepresented the quality of work of another attorney in the firm for purposes of his own financial gain); *In re Disciplinary*

*Proceedings Against Curran,* 180 Wis. 2d 540, 509 N.W.2d 429 (1994) (two-year suspension justified when lawyer paid himself $56,000 in management fees related to an office building owned by law firm partners without informing partners of fees, and diverted over $90,000 in client payments to his own personal account); *In re Disciplinary Proceedings Against Casey,* 174 Wis. 2d 341, 496 N.W.2d 94 (1993) (60–day suspension justified when lawyer misappropriated three client retainers, totaling $2,300, rather than turning them over to his firm); *In re Disciplinary Proceedings Against Kerzisnik,* 167 Wis. 2d 713, 482 N.W.2d 897 (1992) (license revocation justified when lawyer misappropriated over $10,000 by improperly converting airline tickets paid for by his law firm and billed to its clients, diverting client and settlement funds intended to pay for law firm services, and attempting to charge clients for expenses not incurred and for legal work not performed).

¶ 32.   Although it is difficult to compare disciplinary cases because of the unique facts of each, it is clear that the sanctions Attorney Siderits seeks—either a public reprimand or a two- to six-month suspension—would be inadequate. We must impose the discipline needed to protect the public, the courts, and the legal system from Attorney Siderits' repetition of misconduct, to impress upon him the seriousness of his misconduct, and to deter other attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910. Considering these factors, we conclude that more than a reprimand or minimal license suspension is required, especially in light of the seriousness of Attorney Siderits' misconduct, the pattern of miscon-

duct he displayed, and his adherence to an exculpatory explanation for his actions that his law partners, the referee, and this court all found implausible.

¶ 33. However, given the unique circumstances of this case, and acknowledging that the imposition of discipline in attorney disciplinary cases is not an exact science, we believe that the recommended 18–month license suspension is not quite necessary. We conclude that a 12–month license suspension is sufficient to advance the objectives of lawyer discipline. This is so due to the number of mitigating factors that appear in the record. Attorney Siderits has no previous disciplinary history. He lost his job with the Firm. He paid $60,000 to the Firm to compensate for the bonuses to which he was not entitled and for other unspecified damages claimed by the Firm. He forfeited his interest in the Firm's profit sharing plan. As explained below, these disciplinary proceedings have been costly to Attorney Siderits. We are persuaded that, given these particular circumstances, Attorney Siderits understands the seriousness with which this court views his conduct, and he will not likely repeat it.

¶ 34. Finally, we address the issue of costs, which total $18,916.68 as of October 22, 2012. Attorney Siderits has made no objection to their full imposition. Supreme court rule 22.24(1m) provides that it is this court's general policy upon a finding of misconduct to impose all costs upon the respondent. We follow that policy here.

¶ 35. IT IS ORDERED that the license of Matthew C. Siderits to practice law in Wisconsin is suspended for a period of one year, effective February 4, 2013.

¶ 36. IT IS FURTHER ORDERED that Matthew C. Siderits shall comply with the requirements of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 37. IT IS FURTHER ORDERED that within 60 days of the date of this order, Matthew C. Siderits shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 38. IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. *See* SCR 22.29(4)(c).

¶ 39 SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with the referee's recommendation of an 18–month suspension of Attorney Siderits' law license as appropriate discipline. Accordingly, I dissent.