**2026 WI 17**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
JEROME J. BABIAK, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant,*

*v.*

JEROME J. BABIAK,
*Respondent.*

No. 2024AP587-D
Decided May 29, 2026

ATTORNEY DISCIPLINARY PROCEEDING

¶1    PER CURIAM. We review the report of Referee David A. Piehler, recommending that Attorney Jerome J. Babiak's Wisconsin law license be suspended for four years as discipline for two counts of misconduct. Regarding the first count, the OLR alleged, the parties stipulated, and the referee concluded that Attorney Babiak's conduct resulting in his conviction of two counts of fourth-degree sexual assault reflected adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects. *See* Supreme Court Rule (SCR) 20:8.4(b).[1] Regarding the

---

[1] Supreme Court Rule 20:8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

second count, the OLR alleged, the parties stipulated, and the referee concluded that Attorney Babiak's course of conduct toward the victim violated that portion of the Attorney's Oath, set forth in SCR 40.15 and enforceable via SCR 20:8.4(g), by which an attorney swears to "abstain from all offensive personality."[2] The referee recommends the court set the commencement date of the four-year suspension for January 26, 2024—the date of this court's order summarily suspending Attorney Babiak's license as a result of his conviction of a serious crime. *See* SCR 22.20(1), (2). The referee further recommends that we order Attorney Babiak to pay the full

---

[2] SCR 40.15, Attorney's oath, states:

> The oath or affirmation to be taken to qualify for admission to the practice of law shall be in substantially the following form:
>
> I will support the constitution of the United States and the constitution of the state of Wisconsin;
> I will maintain the respect due to courts of justice and judicial officers;
> I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land;
> I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;
> I will maintain the confidence and preserve inviolate the secrets of my client and will accept no compensation in connection with my client's business except from my client or with my client's knowledge and approval;
> I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;
> I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause 227 for lucre or malice. So help me God.

SCR 20:8.4(g) states that it is professional misconduct for a lawyer to "violate the attorney's oath."

costs of this disciplinary proceeding, which total $13,224.55. No appeal has been filed so we consider this matter pursuant to SCR 22.17(2).[3]

¶2   We approve and adopt the referee's findings of fact and conclusions of law with respect to Attorney Babiak's misconduct. We depart from the referee's recommendation that Attorney Babiak's misconduct warrants a four-year suspension. For the reasons explained below, we hold that his misconduct warrants revocation, effective January 26, 2024, the effective date of the underlying SCR 22.20 summary suspension. Consistent with our standard practice, we impose the full costs of this proceeding on Attorney Babiak. The OLR did not seek restitution in this matter and no restitution is ordered.

¶3   Attorney Babiak was admitted to practice law in Wisconsin in 2017. He most recently practiced law in the Wisconsin Rapids area. He has no prior disciplinary history. As mentioned above, on January 26, 2024, this court summarily suspended Attorney Babiak's Wisconsin law license pursuant to SCR 22.20(1) due to his criminal conviction, which is described more fully below. His license remains suspended.

¶4   The State filed a criminal complaint against Attorney Babiak in March 2023. The criminal complaint alleged two counts of fourth-degree sexual assault by Attorney Babiak of "Amy" (a pseudonym; *see generally* WIS. STAT. § (Rule) 809.86).

¶5   In May 2023, Attorney Babiak pled guilty to and was convicted of the two charged counts of fourth-degree sexual assault. In June 2023, the circuit court withheld sentence and placed Attorney Babiak on probation for two years.

¶6   Attorney Babiak's criminal conviction formed the basis for the OLR's November 2023 motion to summarily suspend his license pursuant to SCR 22.20, which, as mentioned, this court granted on January 26, 2024.

---

[3] SCR 22.17(2) states, "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline."

¶7      Soon thereafter, the OLR filed a disciplinary complaint against Attorney Babiak. The disciplinary complaint alleged the following two counts of misconduct:

COUNT 1

By engaging in conduct resulting in his conviction on two counts of Fourth Degree Sexual Assault, in violation of § 940.225(3m), **Attorney Babiak violated SCR 20:8.4(b).**

COUNT 2

By engaging in a course of conduct that included flirtatious, romantic and sexually suggestive communications with the victim and physical sexual contact with the victim; and by engaging in physical sexual contact with the victim without her consent in each instance, **Babiak violated SCR 20:8.4(g) and SCR 40.15.**

The OLR asked the court to revoke Attorney Babiak's Wisconsin law license as a sanction for his misconduct.

¶8      On May 2, 2024, Attorney Babiak filed an answer to the OLR's complaint. In it, he denied the two counts of misconduct and raised various affirmative defenses.

¶9      This court appointed David A. Piehler to act as the referee in this matter. In September 2024, the parties entered into a stipulation in which they agreed that "the recitation of the facts contained within the Criminal Complaint are hereby stipulated to as true and correct, and are incorporated into this stipulation by reference." They further agreed that Attorney Babiak's conduct as described in the criminal complaint constituted a violation of SCR 20:8.4(b) (Count 1) and a violation of the Attorney's Oath and its mandate that Attorney Babiak not engage in any offensive personality, *see* SCR 20:8.4(g) and SCR 40.15 (Count 2). The parties further agreed to submit the issue of the appropriate sanction for Attorney Babiak's misconduct to the referee.

¶10     The referee held an evidentiary hearing on October 30, 2024, at which only Attorney Babiak testified. The parties submitted briefs on the issue of sanctions to the referee. The OLR continued to argue for the

sanction sought in its complaint—revocation. Attorney Babiak asked for a suspension of between two and three years.

¶11    In his report filed January 29, 2025, the referee found, consistent with the parties' stipulation, that the facts pled in the criminal complaint are true and correct. The referee did not include a separate narration of these facts in his report; he essentially adopted the entirety of the criminal complaint's recitation of the facts as his findings of fact. We provide a summary of those facts here.

¶12    The victim, Amy, knew Attorney Babiak because for a number of years, he had worked as a criminal defense lawyer for her ex-boyfriend, with whom she shares a child. Amy and Attorney Babiak initially communicated with each other via Attorney Babiak's office phone regarding the status of her ex-boyfriend's criminal matters. Amy viewed this information as potentially useful because she and her ex-boyfriend were involved in a custody dispute over their shared child.

¶13    Attorney Babiak transitioned to using his personal cellphone for his phone calls with Amy. Eventually, many of their communications took place via the messaging application Snapchat.

¶14    The two engaged in increasingly personal communications over the phone and over Snapchat. Some of Attorney Babiak's communications were sexually suggestive and flirtatious. Amy later told law enforcement that she "played along and was very willing to interact with him" because she thought that by doing so, she would continue to obtain information from him regarding the criminal cases against her ex-boyfriend.

¶15    Attorney Babiak's sexual advances became more persistent and explicit. Amy later told law enforcement, for example, that he "would often try to get her to come to his house" and that he "sent plenty of penis pics." His behavior made Amy uncomfortable, but she was afraid that if she reported it, she would lose access to the information that Attorney Babiak was providing her about her ex-boyfriend's criminal cases. She later told law enforcement that eventually she "backed off of their communications, finding them to be over the top or simply too much to deal with."

¶16    On August 30, 2022, both Amy and Attorney Babiak were present at the county courthouse to attend a hearing in a criminal case

involving Amy's ex-boyfriend. Before the hearing began, Attorney Babiak walked past Amy in the courthouse hallway and told her to follow him into a nearby conference room, which she did. Attorney Babiak shut the door behind her. Amy took a seat. Attorney Babiak asked her if she had any questions about the hearing. He then asked her why she was sitting in the chair right in front of the window in the door. He told her to switch to a different chair. When she walked past him, he pinned her against the wall using his hand against her throat. He put his tongue into her mouth and put his hand inside her pants. He inserted his fingers inside her vagina. He then withdrew his hand from her pants, said it was time to go to the hearing, told her to wait in the conference room after the hearing, and left the room.

¶17    Amy did not next see Attorney Babiak until September 14, 2022. At around 11:00 a.m. that day, Attorney Babiak made an unexpected visit to her apartment. After Amy let him into the apartment and closed the door, he grabbed her by the throat and pushed her into the living room toward the couch. Amy told him "no" and said that she had a scheduled videocall starting soon. Attorney Babiak pulled Amy's pants down and inserted his fingers into her vagina. She extricated herself from him, pulled her pants back up, and walked into the kitchen. Attorney Babiak followed her, unbuttoning and lowering his pants as he walked. She told him to stop. He pulled her pants back down, picked her up, and set her down on her stove in a seated position. While she was on the stove, he pulled her towards him and attempted to open her legs as she tried to push him away while saying "no." He came close to inserting his penis in her vagina. Amy was able to extricate herself and got down off of the stove. She pulled her pants up as she walked to a table on which her phone was sitting. While pretending to check her phone, she surreptitiously started recording. On the recording, Attorney Babiak could be heard entreating her to take her pants off and have sex, and Amy could be heard saying "no" and "stop" and that she needed to join her scheduled videocall. Ultimately Attorney Babiak relented, got dressed, told her that her ex-boyfriend's next court hearing was going to be rescheduled, and left the apartment. Amy later contacted law enforcement, which led to the criminal charges against Attorney Babiak, which in turn ultimately led to the OLR's misconduct charges against him.

¶18    In his report, the referee accepted the parties' stipulation of misconduct as to both counts alleged in the disciplinary complaint.

¶19     The referee then turned to the recommended sanction. Starting first with the seriousness of the misconduct, the referee described Attorney Babiak's misconduct as "reprehensible," meriting "a severe sanction." The referee observed that Attorney Babiak's convictions for misdemeanors "understate the seriousness of this case," as the facts pled in the criminal complaint could have supported felony charges. The referee also expressed significant concern that one of the sexual assaults occurred in the county courthouse.

¶20     The referee found a number of aggravating factors in play. Attorney Babiak had a selfish motive, i.e., his personal sexual gratification. There was a pattern of misconduct in that his assaults took place on two separate dates in different locations. The victim was vulnerable in that she was motivated to interact with Attorney Babiak to obtain information regarding the legal cases against her ex-boyfriend that she might use in her child custody case, thereby giving Attorney Babiak a degree of power over her. Relatedly, Attorney Babiak's status as an attorney served to discourage the victim from coming forward to complain about his behavior. Finally, Attorney Babiak had sufficient experience in the practice of law, particularly criminal defense, to clearly know the wrongfulness of his actions.

¶21     On the mitigating side of the scale, the referee noted that Attorney Babiak has no disciplinary record; he has cooperated with the OLR; he has undergone counseling; he has been criminally penalized for his actions; and he has accepted responsibility and expressed what the referee deemed to be genuine remorse. The referee further noted that Attorney Babiak has experienced adverse consequences for his actions, including the embarrassment and dishonor of being a criminal defendant in the same courtroom in which he practiced; this court's summary suspension of his license; and the dissolution of his marriage.

¶22     Taking all of the above into account, the referee recommended that a four-year suspension would be appropriate for Attorney Babiak. The referee considered recommending revocation, but after conducting a thorough review of recent disciplinary cases culminating in revocation, he concluded that Attorney Babiak's misconduct was not as severe as that involved in the two cases he deemed particularly instructive: *In re Disciplinary Proceedings Against Meyer*, 2022 WI 39, 401 Wis. 2d 732, 975 N.W.2d 229 (revoking attorney's license due to a course of conduct that led to felony convictions of threatening to communicate derogatory

information and stalking, and also included the attorney's fabrication of character reference letters submitted to the prosecutor's office during plea negotiations); and *In re Disciplinary Proceedings Against Dudas*, 2021 WI 5, 395 Wis. 2d 345, 953 N.W.2d 870 (revoking attorney's license based on conduct underlying convictions on 30 criminal counts, including felony first-degree sexual assault, felony second-degree reckless injury, felony substantial battery, 14 counts of felony second-degree sexual assault, 11 counts of felony strangulation and suffocation, one count of misdemeanor battery, and one count of misdemeanor intimidation of a victim). The referee explained that

> although Mr. Babiak's actions were indeed egregious, there are degrees of egregiousness. His actions, as reprehensible as they are, do not rise to the degree of egregiousness and aggravation of the crimes committed by Meyer and Dudek. Those crimes merited revocation. Mr. Babiak's crimes merit a substantial penalty short of revocation. Hence my recommendation of a four year suspension.

The referee recommended that this four-year suspension be made effective as of the date of Attorney Babiak's summary suspension (January 26, 2024).

¶23    As noted above, no appeal was filed, so we review this matter pursuant to SCR 22.17(2). We will affirm the referee's findings of fact unless they are clearly erroneous. We review conclusions of law de novo. *See In re Disciplinary Proceedings Against Eisenberg*, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We may impose whatever sanction we see fit, regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶24    There is no showing that any of the referee's findings of fact—which adopted in whole the facts pled in the criminal complaint, per the parties' stipulation—are clearly erroneous. Accordingly, we adopt them.

¶25    We also agree with the referee's legal conclusions that Attorney Babiak violated the Supreme Court rules noted above. In analyzing whether Attorney Babiak's conduct violated SCR 20:8.4(b) as alleged in Count One, we focus not on the particular criminal charges to which Attorney Babiak pled guilty, but on the nature of the conduct that he stipulated he committed for purposes of this proceeding. *See In re Disciplinary Proceedings Against Ritland*, 2021 WI 36, ¶27, 396 Wis. 2d 509,

957 N.W.2d 540. We of course do not know why the prosecutor in Attorney Babiak's criminal case elected to charge him with misdemeanors and not felonies. Nevertheless, here we may take as fact that Attorney Babiak engaged in two forceful, penetrative sexual assaults, two weeks apart, in two different locations. One of these locations was a courthouse conference room, just before Attorney Babiak appeared in court on behalf of the father of Amy's child. There is no question that this behavior "is so revealing of character defects, and so undermines public confidence in the legal profession, that it necessarily reflects adversely on [Attorney Babiak's] fitness as a lawyer." *In re Disciplinary Proceeding Against Johns*, 2014 WI 32, ¶38, 353 Wis. 2d 746, 847 N.W.2d 179. Accordingly, we adopt the referee's recommendation and hold that Attorney Babiak violated SCR 20:8.4(b).

¶26 We turn next to Count Two, which, again, alleged that "[b]y engaging in a course of conduct that included flirtatious, romantic and sexually suggestive communications with the victim and physical sexual contact with the victim; and by engaging in physical sexual contact with the victim without her consent, in each instance," Attorney Babiak violated the "offensive personality" clause of the Attorney's Oath. *See* SCR 20:8.4(g) and SCR 40.15. This count is not particularly well pled. Among other issues, its separate references to "physical sexual contact with the victim" and "physical sexual contact with the victim without her consent" leaves us uncertain as to the range and nature of the physical acts at issue in this count.

¶27 We therefore limit our consideration of this count to the sexual advances that Attorney Babiak directed to Amy via phone, text, and Snapchat. Even though Amy was not Attorney Babiak's client, there was still an unequal balance of power between them. Because one of his criminal clients was an individual with whom Amy was engaged in a child custody dispute, Attorney Babiak was in the position of being a lawyer with case information and legal knowledge that Amy valued. Our ethical rules required him to refrain from exploiting this situation for his own advantage. This he did not do. Sending Amy sexually aggressive messages—which included, as she later told law enforcement, "plenty of penis pics"—shows a complete lack of the professional restraint required of him. We have no difficulty concluding this behavior reflects adversely on his fitness as a lawyer and therefore violates the "offensive personality" clause of the Attorney's Oath. *See In re Disciplinary Proceedings Against Kratz*, 2014 WI 31, ¶¶28, 30, 32, 46, 353 Wis. 2d 696, 851 N.W.2d 219 (holding that a prosecutor engaged in offensive personality by sending sexually

suggestive text messages to a domestic abuse crime victim and by making lewd verbal statements to two other individuals); *see also In re Disciplinary Proceedings Against Beaver*, 181 Wis. 2d 12, 22, 510 N.W.2d 129, 133 (1994) (holding that an offensive personality claim must relate to conduct that reflects adversely on a person's fitness as a lawyer).

¶28    We turn next to the central issue for this court:  Whether the referee's four-year recommended suspension is appropriate for the behavior underlying the two counts of misconduct at issue here. We conclude the answer is "no" and that revocation is warranted.

¶29    The referee is correct to point out that Attorney Babiak's misconduct varies in degree and detail from the misconduct involved in *Meyer* and *Dudas*. This is not surprising. Each disciplinary case has its own facts, and many of the factors we must measure in disciplinary cases are unquantifiable, making comparisons necessarily inexact. There is no scale or conversion table to definitively tell us, for example, whether the egregiousness of Attorney Babiak's ethical violations stemming from his criminal behavior equals the egregiousness of Attorney Meyer's and Attorney Dudas' ethical violations stemming from their criminal behavior. Nor does our case-comparison process involve assigning precise weights to various aggravating and mitigating factors and comparing the columns in one case versus another. As we have said before, the imposition of discipline in attorney disciplinary cases "is not an exact science." *In re Disciplinary Proceedings Against Siderits*, 2013 WI 2, ¶33, 345 Wis. 2d 89, 824 N.W.2d 812. Thus, the fact that this court ordered revocations in *Meyer* and *Duda*s does not mean that the particular facts of those cases amount to any sort of floor for what is considered revocation-worthy misconduct.

¶30    Our task is not to identify perfectly identical cases, but to identify cases that are helpful by way of analogy. We believe the *Meyer* case fits this description. There, we held that the respondent attorney engaged in a course of conduct that showed "a complete and utter disregard for his obligations as an attorney"—an unwillingness or inability "to conform his conduct to the standards that are required to practice law in this state." *In re Meyer*, 401 Wis. 2d 732,  ¶35. "No sanction short of revocation," we wrote, "would be sufficient to protect the public, deter other lawyers from similar behavior, and impress upon [the respondent attorney] the errors of his ways." *Id.*

¶31 Despite the factual differences between the cases, those statements ring true here. Our recent caselaw has made it "exceedingly clear that attorneys who engage in sexual misconduct do so at their professional peril." *See In re Ritland*, 396 Wis. 2d 509, ¶¶37-38 (collecting cases). Despite this warning, Attorney Babiak chose to commit a forcible, penetrative sexual assault *in a courthouse*. As the referee aptly noted, this assault "broke not only the law, but the norms of decorum, dignity, and sanctity that should be present within a location where justice is intended to be accomplished, within which everyone has the right to be safe and secure, and within which attorneys should uphold the highest standards." Two weeks later, Attorney Babiak committed another forcible, penetrative sexual assault inside Amy's home. Leading up to these assaults, Attorney Babiak directed a series of prodding, sexually aggressive communications to Amy, who felt compelled to tolerate them because of his position as the lawyer for the father of her child. In all these acts, Attorney Babiak used the power and authority derived from his law license for his own ends. As in *Meyer*, these actions showed Attorney Babiak's "complete and utter disregard for his obligations as an attorney," and his unwillingness or inability "to conform his conduct to the standards that are required to practice law in this state." *In re Meyer*, 401 Wis. 2d 732, ¶35. As in *Meyer*, "[n]o sanction short of revocation would be sufficient to protect the public, deter other lawyers from similar behavior, and impress upon [Attorney Babiak] the errors of his ways." *Id.*

¶32 Our imposition of revocation has not overlooked Attorney Babiak's lack of prior disciplinary history; his expressions of remorse; his cooperation with these disciplinary proceedings; and the criminal penalties he has received (two years of probation, sentence withheld). We are mindful of these mitigating factors and have accounted for them in imposing discipline.[4] We conclude that, even with these mitigating factors,

---

[4] Unlike the referee, we do not assign mitigating credit to the embarrassment and marital difficulties Attorney Babiak's criminal actions have caused him. These are the natural consequences of his egregious misconduct, not "other penalties or sanctions" that mitigate against the imposition of a stronger sanction. *See* American Bar Association, Annotated Standards for Imposing Lawyer Sanctions, Standard 9.32(k), Annotation at 535 (2d ed. 2019) (explaining that "[n]ot every negative consequence of misconduct that a lawyer faces" is considered a mitigating factor).

Attorney Babiak's actions are too egregious to permit a sanction less than revocation. Consistent with past disciplinary matters that were commenced following an SCR 22.20 summary suspension, we will set the commencement date of the revocation for January 26, 2024, the effective date of the underlying SCR 22.20 summary suspension. *See, e.g., In re Dudas*, 395 Wis. 2d 345, ¶14.

¶33     Finally, we turn to the issue of costs and restitution. As noted earlier, the current costs total $13,224.55. The referee has recommended the imposition of full costs. Attorney Babiak has not filed an objection. We see no reason to depart from our general policy of imposing full costs on the disciplined lawyer. SCR 22.24(1m). As for restitution, none was sought and none is ordered.

¶34     IT IS ORDERED that the license of Jerome J. Babiak to practice law in Wisconsin is revoked, effective January 26, 2024.

¶35     IT IS FURTHER ORDERED that within 60 days of the date of this order, Jerome J. Babiak shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $13,224.55.

¶36     IT IS FURTHER ORDERED that Jerome J. Babiak shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.

IN RE DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY JEROME J. BABIAK
JUSTICE ZIEGLER, concurring

ANNETTE KINGSLAND ZIEGLER, J., with whom JILL J. KAROFSKY, C.J., REBECCA GRASSL BRADLEY, BRIAN K. HAGEDORN, and JANET C. PROTASIEWICZ, JJ., join, concurring.

¶37    I concur in the court's order revoking Attorney Babiak's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶38    For the foregoing reason, I concur.