# Supreme Court of Wisconsin

| | |
|---|---|
| CASE NO.: | 2021AP1222-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Matthew R. Meyer, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| |     v. |
| | Matthew R. Meyer, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MEYER

| | |
|---|---|
| OPINION FILED: | June 8, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

JUSTICES:
Per Curiam. ZIEGLER, C.J., filed a concurring opinion in which REBECCA GRASSL BRADLEY, J., and HAGEDORN, J., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion.
NOT PARTICIPATING:

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP1222-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Matthew R. Meyer, Attorney at Law:**

**Office of Lawyer Regulation,**

**Complainant,**

**FILED**

**v.**

**JUN 8, 2022**

**Matthew R. Meyer,**

Sheila T. Reiff
Clerk of Supreme Court

**Respondent.**

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. We review a report filed by Referee Jean A. DiMotto concluding, based on a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Matthew R. Meyer, that Attorney Meyer committed two counts of professional misconduct as alleged in the OLR's complaint. The referee agreed with the parties that a two-year suspension of Attorney Meyer's license to practice law in Wisconsin is an appropriate level of discipline for the misconduct. The referee also recommended, consistent with the stipulation, that the court

impose the following conditions on Attorney Meyer's reinstatement:

    a.  Provide the OLR with signed releases for any mental health and alcohol and other drug abuse (AODA) treatment provider who is providing or has provided treatment to Attorney Meyer within the last four years prior to his filing of a reinstatement petition.

    b.  Provide proof of participation in mental health counseling.

    c.  Comply with all terms and conditions of his probation related to Milwaukee County Case No. 2019CF4573.

    d.  Provide documentation of the completion of an anger management program.

    e.  Provide documentation of the completion of a certified batterers' treatment program.

¶2  In addition, the referee recommended that Attorney Meyer's reinstatement be conditioned on his submitting to an examination by a psychiatric or psychological expert of the OLR's choosing who shall evaluate the effectiveness of Attorney Meyer's rehabilitation.  Finally, the referee recommended that Attorney Meyer be assessed the full costs of this proceeding, which are $1,891.81 as of November 17, 2021.  Attorney Meyer has filed an objection to the recommended costs.

¶3  While we accept the referee's factual findings and conclusions of law, we conclude Attorney Meyer's serious and

2

disturbing conduct, in which he used his position as an attorney to intimidate and threaten a woman with whom he had been in a relationship, warrants the revocation of his Wisconsin law license. In the event Attorney Meyer seeks the reinstatement of his license to practice law, we agree with the conditions recommended by the referee, except for the requirement that Attorney Meyer undergo a psychological or psychiatric examination. We deny Attorney Meyer's objection to costs and order him to pay the full costs of this proceeding.

¶4 Attorney Meyer was admitted to the practice of law in Wisconsin in 2012 and practices in Milwaukee. He has no prior disciplinary history.

¶5 On July 15, 2021, the OLR filed a complaint against Attorney Meyer alleging two counts of misconduct arising out of felony convictions for threatening to communicate derogatory information and stalking. The victim in the case was H.S., who had been in a dating relationship with Attorney Meyer.

¶6 According to the OLR's complaint, in late October 2017, H.S. broke off her approximately nine-month dating relationship with Attorney Meyer. Attorney Meyer subsequently engaged in a pattern of conduct aimed at H.S. to cause her to believe that Attorney Meyer would ruin her life, commit acts of violence against her and her family and friends, damage her property, interfere with future relationships she may have, and leave her without a job and money. Attorney Meyer also made threats to H.S. to ruin her reputation with her employer.

3

¶7 On April 14, 2018, during an argument in Attorney Meyer's apartment, Attorney Meyer punched H.S. in the face, resulting in a concussion and facial bruising significant enough for her to miss approximately two weeks of work. At the time of this incident, Attorney Meyer and H.S. had separate apartments in the same building. H.S. returned to her apartment and called the police. When police arrived, H.S. informed them she did not want to pursue criminal charges because she feared Attorney Meyer.

¶8 On multiple occasions after April 2018, Attorney Meyer made unwelcome and persistent phone calls to H.S. On at least one occasion, he made in excess of 120 calls in one day. H.S. was employed as a physician assistant and was required to keep her phone on at all times. Attorney Meyer also sent H.S. hundreds of unwelcome email messages. He made threats of harm to her, appeared at her apartment unannounced, and refused to leave.

¶9 On March 2, 2019, Attorney Meyer threatened H.S. with violence in her apartment, and she barricaded herself in the bathroom. Attorney Meyer locked H.S. in the bathroom and she called police. She stated the bathroom door can be locked from the outside, and it cannot be easily unlocked from the inside. H.S. was able to free herself before the police arrived, and she again told police she did not want to press charges against Attorney Meyer because she was afraid of him.

¶10 Attorney Meyer also threatened to send negative information about H.S. to her employer, her family and friends,

4

and the news media if she did not perform various tasks for him. Those tasks included payments of debts he claimed to be owed, to reveal intimate details of H.S.'s relationships with others, and to have sex with Attorney Meyer.

¶11 In early June 2019, H.S. again attempted to break up with Attorney Meyer and cut off all communication with him. On June 23, 2019, Attorney Meyer followed H.S. into the underground parking garage of her apartment. At this time, Attorney Meyer and H.S. no longer lived in the same building. Attorney Meyer opened the door to H.S.'s car, yelled at her and poured an energy drink on her vehicle. H.S. reported this incident to police.

¶12 During and after the relationship, Attorney Meyer communicated his intent to harm H.S. by using criminal defendants to enact violence on her family and men Attorney Meyer believed she had been intimate with; by employing a private investigator to follow H.S.; and threatening to sue H.S. for $20,000 for posting a negative Google review of Attorney Meyer's law practice. Attorney Meyer repeatedly told H.S. he was insulated from legal consequences because of his position as a criminal defense lawyer.

¶13 On August 23, 2019, H.S. broke up with Attorney Meyer for the last time. During an argument in Attorney Meyer's apartment, Attorney Meyer grabbed H.S. by the back of her head, covered her mouth with his other hand and told her to shut up. H.S. tried to call 911, but Attorney Meyer broke her phone by

smashing it to the ground. He then pushed H.S., who fell and injured her elbow.

¶14 After August 23, 2019, H.S. received hundreds of text and email messages from Attorney Meyer despite H.S.'s requests that Attorney Meyer cease attempting to communicate with her.

¶15 The criminal investigation revealed an extremely high number of calls to H.S. from blocked phone numbers in rapid succession, including from phone numbers listed to Attorney Meyer. On October 8, 2019, H.S. received 68 calls from blocked or spoofed phone numbers, 41 WhatsApp text messages, 12 WhatsApp phone/video calls, and 12 emails from Attorney Meyer.

¶16 By using SpoofCard, Attorney Meyer was able to call and send H.S. text messages that appeared to be sent from other numbers in her contact list, such as friends and family.

¶17 During and after the relationship, Attorney Meyer threatened to damage and did, in fact, damage H.S.'s vehicle. On October 4, 2019, H.S. received emails and texts from Attorney Meyer saying there was damage to her vehicle. H.S. later observed that her vehicle had a flat tire and dents on the passenger side. She reported this incident to the police.

¶18 Attorney Meyer told H.S. he had a key to her apartment despite the fact she had never given him one.

¶19 On October 6, 2019, Attorney Meyer sent H.S. a photo of the screen of his laptop, showing a draft email he had created appearing to be sent from H.S.'s father's email address. The email purporting to be from H.S.'s father, but in fact drafted by Attorney Meyer, alleged that H.S. had violated Health

6

Insurance Portability and Accountability Act (HIPAA) by discussing confidential patient information in public, and claimed that H.S.'s father had an audio recording of this.

¶20 Subsequent text messages from Attorney Meyer to H.S. threatened to send the email to H.S.'s employer if H.S. did not give into Attorney Meyer's demands. Attorney Meyer later sent the email to H.S.'s employer. The email indicated that H.S.'s father desired to meet the employer and turn over an audio recording in which H.S. allegedly discussed confidential patient information in public. No such audio recording existed.

¶21 On October 15, 2019, Attorney Meyer was charged with four felonies: substantial battery, threatening to communicate derogatory information, intimidation of a victim, and stalking. During plea discussions, Attorney Meyer's attorney submitted a settlement offer and a packet of documents to the assistant district attorney (ADA) who was prosecuting Attorney Meyer. The packet included character reference letters. The ADA rejected Attorney Meyer's attorney's settlement offer. Attorney Meyer's attorney then sent the same packet of documents to the district attorney and the deputy chief district attorney. One of the reference letters in the packet purported to be from Sergio Rodriguez, who worked at Attorney Meyer's apartment building. Another purportedly was from Noah Taylor, a friend of Attorney Meyer. The criminal investigation concluded that the two character letters purportedly authored by Rodriguez and Taylor had in fact been fabricated by Attorney Meyer. Rodriguez and Taylor both denied writing letters on Attorney Meyer's behalf.

7

As part of the final plea agreement, the State agreed not to issue bail jumping charges for obstruction of justice based on the fabricated letters.

¶22 On June 24, 2020, Attorney Meyer pled guilty to felony charges of threatening to communicate derogatory information and stalking. The substantial battery and intimidation of a victim charges were dismissed. On July 30, 2020, Attorney Meyer was sentenced to 18 months of initial confinement and two years of extended supervision, which sentence was stayed, on the threatening to communicate derogatory information charge. He was sentenced to one year of straight time in the House of Corrections on the stalking charge.

¶23 The OLR's complaint alleged the following counts of misconduct:

**Count 1:** By engaging in conduct leading to a felony conviction of threatening to communicate derogatory information, and by engaging in conduct leading to a felony conviction of stalking, Attorney Meyer in each instance violated Supreme Court Rule (SCR) 20:8.4(b).[1]

**Count 2:** By creating fabricated character reference letters for submission to the district attorney's office during plea negotiations, Attorney Meyer violated SCR 20:8.4(c).[2]

---

[1] SCR 20:8.4(b) provides: It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

[2] SCR 20:8.4(c) provides: It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

¶24 James Friedman was appointed referee on August 4, 2021. Attorney Meyer filed a motion for substitution of referee on August 9, 2021. The motion was granted, and the Honorable Jean A. DiMotto was appointed referee on August 10, 2021. On October 8, 2021, the parties filed a stipulation in which Attorney Meyer pled no contest to the two counts of misconduct alleged in the OLR's complaint. Attorney Meyer agreed that the referee could use the allegations of the complaint as an adequate factual basis to support the allegations of misconduct. The parties agreed that the appropriate level of discipline to be imposed for Attorney Meyer's misconduct was a two-year suspension of his Wisconsin law license, with various conditions for reinstatement.

¶25 The referee issued her report and recommendation on October 28, 2021. The referee adopted the allegations in the complaint as her findings of fact, and she found that by engaging in conduct leading to a felony conviction of threatening to communicate derogatory information, and by engaging in conduct leading to a felony conviction of stalking, Attorney Meyer violated SCR 20:8.4(b) and that by creating fabricated reference letters for submission to the district attorney's office during plea negotiations, Attorney Meyer violated SCR 20:8.4(c).

¶26 The referee said she was satisfied a two-year suspension of Attorney Meyer's license to practice law was an appropriate level of discipline. In addition, the referee said:

I note that Respondent Meyer's misconduct here is of an obsessive and character-disordered nature. This causes me concern about the effectiveness of Respondent Meyer's rehabilitation and the potential impact on the safety of the public should he be reinstated.

¶27 As a result of the referee's concern, she added a recommendation to those contained in the stipulation, which was that Attorney Meyer submit to an examination by a psychiatric or psychological expert of the OLR's choosing who shall evaluate the effectiveness of Attorney Meyer's rehabilitation.

¶28 No appeal has been filed from the referee's report, so our review proceeds under SCR 22.17(2). In conducting our review, we uphold a referee's findings of fact unless they are shown to be clearly erroneous, and we review the referee's conclusions of law de novo. See In re Disciplinary Proceedings Against Carroll, 2001 WI 130, ¶29, 248 Wis. 2d 662, 636 N.W.2d 718. We determine the appropriate level of discipline to be imposed under the circumstances, independent of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶29 There is no showing that any of the referee's findings of fact, which are derived from the parties' stipulation, are clearly erroneous and we adopt them. We also agree with the referee's conclusions of law that Attorney Meyer violated the Supreme Court Rules set forth above.

¶30 We now turn to the appropriate level of discipline for Attorney Meyer's misconduct. After careful review of the

10

record, we conclude that revocation of Attorney Meyer's license to practice law in Wisconsin is the appropriate sanction.

¶31 "Revocation of an attorney's license to practice law is the most severe sanction this court can impose. It is reserved for the most egregious cases." In re Disciplinary Proceedings Against Cooper, 2013 WI 97, ¶34, 351 Wis. 2d 350, 839 N.W.2d 857. This is one of those cases.

¶32 The undisputed facts show a clear pattern of Attorney Meyer using his position as an attorney to intimidate and threaten H.S. On more than one occasion, Attorney Meyer physically assaulted H.S. One of the assaults resulted in injuries serious enough to cause H.S. to miss approximately two weeks of work. On more than one occasion, although police were called, H.S. said she did not want to pursue criminal charges because she was afraid of Attorney Meyer.

¶33 Attorney Meyer made hundreds of unwelcome telephone calls and sent hundreds of unwelcome email messages to H.S. Many of the messages and calls were sent while H.S. was working in a position where she was required to keep her phone on at all times. Attorney Meyer threatened to send negative information about H.S. to her employer, her family and friends, and the news media if she did not do what he asked, including having sex with him. Attorney Meyer created a fake email that purported to be from H.S.'s father alleging that H.S. had committed HIPAA violations, threatened to send the email to H.S.'s employer if she did not give in to his demands, and did ultimately send the email to the employer. Attorney Meyer communicated his intent

11

to harm H.S. by using criminal defendants to inflict violence on her family and men with whom Attorney Meyer believed H.S. had been intimate.

¶34 Attorney Meyer repeatedly told H.S. he was insulated from legal consequences because of his position as a criminal defense lawyer. When criminal charges were finally filed against him, Attorney Meyer falsified letters of reference and presented them to the district attorney in an effort to gain leniency.

¶35 The facts of this case demonstrate a clear pattern of disturbing and egregious misconduct by Attorney Meyer and a complete and utter disregard for his obligations as an attorney. He has shown himself to be unwilling or unable to conform his conduct to the standards that are required to practice law in this state. No sanction short of revocation would be sufficient to protect the public, deter other lawyers from similar behavior, and impress upon Attorney Meyer the errors of his ways.

¶36 We also agree with the referee that it is appropriate to impose certain conditions upon Attorney Meyer's reinstatement. The parties stipulated to a number of conditions, and the referee deemed it appropriate to add an additional condition, that Attorney Meyer's reinstatement be conditioned on his submission to an examination by a psychiatric or psychological expert of the OLR's choosing who shall evaluate the effectiveness of Attorney Meyer's rehabilitation. We decline to impose this condition. An additional psychiatric or

psychological evaluation is unlikely to be an effective way to determine whether Attorney Meyer is likely to reoffend.

¶37 Finally, we address the question of costs. It is this court's general policy to assess the full costs of a disciplinary proceeding against the attorney being disciplined. SCR 22.24(1m). After the OLR filed its statement on costs, which were $1,891.81 as of November 17, 2021, Attorney Meyer filed a timely objection to costs in which he argues that he should be relieved from paying costs because he and the OLR filed a stipulation soon after his motion for substitution of the originally appointed referee had been granted and Referee DiMotto was appointed successor referee.

¶38 Attorney Meyer notes that the OLR has historically declined to seek costs in cases involving a full stipulation entered into prior to the appointment of a referee, and in those instances this court has declined to impose costs. Attorney Meyer notes that after Referee DiMotto was appointed, the parties asked that they be permitted to file a stipulation which would be submitted to the court without the need of involvement of the referee, but this request was declined and the matter was submitted to Referee DiMotto.

¶39 In its response to Attorney Meyer's objection to costs, the OLR notes that at the outset of this proceeding, prior to the filing of the complaint, the OLR notified Attorney Meyer's counsel of the opportunity to enter into a comprehensive SCR 22.12 stipulation prior to the appointment of a referee and that waiver of costs was possible in that situation. The OLR

13

states that after the disciplinary complaint was filed, Attorney Meyer never discussed stipulating to the charged misconduct and sanction sought by the OLR, until after a referee had been appointed, and the OLR notes that by the time the comprehensive stipulation was filed, both parties had been made aware that costs had been incurred. The OLR renews its original recommendation that the full costs of the proceeding be assessed against Attorney Meyer. In the alternative, it suggests that in the event this court chooses to exercise its discretion to reduce costs, that it at least assess the referee costs against Attorney Meyer.

¶40 We deny Attorney Meyer's objection to the assessment of costs and conclude that he should bear the full costs of this proceeding. As the OLR points out, Attorney Meyer had the opportunity to enter into a comprehensive stipulation prior to the appointment of a referee but chose not to do so. Although he did subsequently enter into a stipulation, by the time the stipulation was filed, costs had been incurred.

¶41 IT IS ORDERED that the license of Matthew R. Meyer to practice law in Wisconsin is revoked, effective July 14, 2022.

¶42 IT IS FURTHER ORDERED that as a condition of the reinstatement of his license to practice law in Wisconsin, Matthew R. Meyer shall be subject to the following conditions:

1. Provide proof of participation in mental health counseling.

2. Provide the Office of Lawyer Regulation with signed releases for any mental health and AODA treatment

14

provider who is or has been providing treatment to Matthew R. Meyer within the four years preceding any petition for reinstatement.

3. Provide documentation of the completion of an anger management program.

4. Provide documentation of the completion of a certified batterers' treatment program.

5. Comply with all terms and conditions of his probation related to Milwaukee County Case No. 2019CF4573.

¶43  IT IS FURTHER ORDERED that within 60 days of the date of this order, Matthew R. Meyer shall pay to the Office of Lawyer Regulation the full costs of this proceeding, which are $1,891.81 as of November 17, 2021.

¶44  IT IS FURTHER ORDERED that Matthew R. Meyer shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

15

¶45 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Meyer's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for readmittance after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶46 For the foregoing reason, I respectfully concur.

¶47 I am authorized to state that Justices REBECCA GRASSL BRADLEY and BRIAN HAGEDORN, join this concurrence.

1

¶48 ANN WALSH BRADLEY, J. *(dissenting).* The parties stipulated to a two-year suspension as discipline in this case and the referee was in accord, deeming a two-year suspension an "appropriate level of discipline for the misconduct." Per curiam, ¶1. Yet in this per curiam opinion, the majority concludes otherwise and imposes instead a revocation of license.

¶49 I write separately because the per curiam opinion fails to tether its chosen level of discipline to any discussion of precedent. It is unique in its approach. I do not recall ever seeing an Office of Lawyer Regulation disciplinary opinion where we imposed discipline without citing to some precedent, using it as a basis of discussion for the level of discipline we impose.

¶50 We often begin our discussion with the caveat that no two cases are alike[1] but nevertheless the level of discipline imposed stays squarely within the confines of analogous prior cases. And, at other times, we acknowledge the existence of the precedent and explain our departure from it. Here the per curiam does neither.

¶51 No cases are cited in the per curiam to support its conclusion because there is no case to cite that supports a revocation. As a result, the imposition of a revocation seems rather arbitrary. If the two-year recommended suspension is not

---

[1] *See, e.g.,* In re Disciplinary Proceedings Against Jones, 2008 WI 53, ¶23, 309 Wis. 2d 585, 749 N.W.2d 603; In re Disciplinary Proceedings Against Parks, 2018 WI 110, ¶67, 384 Wis. 2d 635, 920 N.W.2d 505.

1

sufficient for the majority, why not a three-year suspension, or four years instead?

¶52 In contrast, the memo which supported the two-year stipulation and which the referee commended to this court lists several cases supporting the two-year suspension recommendation.[2] Admittedly the conduct here is egregious, but the explication of bad facts cannot serve as an excuse for this court's failure to acknowledge that it is departing from precedent and then offering a reasoned explanation why.

¶53 I agree with the referee's recommendation because it is tethered to a discussion of precedent and offers a reasoned explanation for the imposition of a two-year suspension. Accordingly, I respectfully dissent.

---

[2] In re Disciplinary Proceedings Against Evenson, 2015 WI 38, 361 Wis. 2d 629, 861 N.W.2d 786 (approving a stipulation to a 30-month suspension when the attorney was convicted of one felony count of delivery of a controlled substance and two misdemeanor counts of fourth degree sexual assault); In re Disciplinary Proceedings Against Ritland, 2021 WI 36, 396 Wis. 2d 509, 957 N.W.2d 540 (ordering a two-year suspension when the attorney was convicted of two counts of attempted adultery and one count of disorderly conduct); In re Disciplinary Proceedings Against Schreier, 2013 WI 35, 347 Wis. 2d 92, 829 N.W.2d 744 (ordering a 30-month suspension based on 20 counts of misconduct, 14 of which were for misdemeanor and felony criminal convictions).