**2026 WI 13**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
OSMAN A. MIRZA, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant-Appellant,*

*v.*

OSMAN A. MIRZA,
*Respondent-Respondent.*

No. 2023AP2369-D
Decided April 15, 2026

ATTORNEY DISCIPLINARY PROCEEDING

¶1    PER CURIAM.  This case returns to the court following our February 27, 2025 decision vacating the referee's initial report and remanding the matter to the referee for further proceedings. *See In re Disciplinary Proceedings Against Mirza*, 2025 WI 6, ¶29, 415 Wis. 2d 209, 17 N.W.3d 272. Our intention in remanding the matter was to obtain clarity on what acts have been alleged and, in the referee's view, sufficiently proven to form the basis for the Office of Lawyer Regulation's (OLR) sole misconduct charge against Attorney Osman A. Mirza; namely that his conduct resulting in two counts of conviction and nine dismissed but read-in counts reflected adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects. *See* Supreme Court Rule (SCR) 20:8.4(b).

¶2    In October 2025, the referee filed a post-remand report, based largely on a stipulation filed by the parties in September 2025. As in his initial report, the referee concludes that Attorney Mirza violated SCR

20:8.4(b) through his criminal acts. As he also did in his previous report, the referee recommends that the court suspend Attorney Mirza's Wisconsin law license for one year, retroactively effective as of October 30, 2023—the date of this court's order summarily suspending Attorney Mirza's license as a result of his conviction of a serious crime. *See* SCR 22.20(1), (2). Finally, as in his previous report, the referee recommends that we order Attorney Mirza to pay the full costs of this disciplinary proceeding, which total $24,056.22 as of October 15, 2025.

¶3 Although the OLR appealed from the referee's initial report and filed briefs with us arguing that a retroactive 30-month suspension was merited, it apparently is no longer of that view. Neither party has filed a notice of appeal from the referee's report on remand, and the OLR has not asked us to consider its previously made arguments against the referee's initial report as part of our present review of the referee's report on remand. Our review therefore proceeds according to SCR 22.17(2).[1]

¶4 After completing our review, we approve the referee's findings and conclusions, but we consider the retroactive one-year suspension recommended by the referee to be too light a sanction. For the reasons explained below, we hold that Attorney Mirza's misconduct merits revocation. We order him to pay the full costs of this proceeding. We accede to the OLR's conclusion that restitution is not warranted.

¶5 We provided a summary of the factual and procedural background of this case in our February 27, 2025 decision. *In re Mirza*, 415 Wis. 2d 209, ¶¶1-19. For the sake of completeness, we repeat much of that summary here, together with a brief synopsis of the events that followed our February 2025 remand.

¶6 Attorney Mirza was admitted to practice law in Wisconsin in 2017. He most recently practiced law in the Milwaukee area. He has no prior disciplinary history. As mentioned above, on October 30, 2023, this court summarily suspended Attorney Mirza's Wisconsin law license pursuant to

---

[1] SCR 22.17(2) states that "[i]f no appeal is timely filed, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline."

SCR 22.20(1) due to his criminal conviction, which is described more fully below. His license remains suspended.

¶7      The criminal case against Attorney Mirza began in Waukesha County Circuit Court in July 2020. The criminal complaint concerned Attorney Mirza's course of conduct between June 2018 and July 2020 toward his now ex-wife, S.E.S. (The marriage, which resulted in two minor children, ended in divorce in February 2021.) In an amended criminal complaint and ensuing information, the State charged Attorney Mirza with eleven criminal counts: felony stalking, misdemeanor criminal trespass, two counts of misdemeanor battery, two counts of felony false imprisonment, one count of felony intimidation of a victim, and four counts of misdemeanor disorderly conduct. Each count carried the WIS. STAT. § 968.075(1)(a) domestic abuse modifier.

¶8      In April 2023, the State and Attorney Mirza reached a plea agreement. Attorney Mirza pled guilty to and was convicted of one count of felony stalking and one count of misdemeanor criminal trespass to dwelling, both as acts of domestic abuse, with the remaining nine other criminal counts dismissed but read in at sentencing. In July 2023, the circuit court sentenced Attorney Mirza to 12 months of jail, stayed for three years of probation, for the felony stalking conviction, and nine months of jail, stayed for two years of probation, for the criminal trespass conviction. The circuit court ordered the sentences to run concurrently to each other.

¶9      Attorney Mirza's criminal conviction formed the basis for the OLR's August 2023 motion to summarily suspend his license pursuant to SCR 22.20, which, as mentioned, this court granted in October 2023.

¶10      Soon thereafter, the OLR filed a disciplinary complaint against Attorney Mirza. The disciplinary complaint attached and referenced:  (1) the detailed, 17-page amended criminal complaint against Attorney Mirza, which described two years of alleged physical and psychological abuse by Attorney Mirza toward S.E.S.; (2) the criminal information charging Attorney Mirza with 11 crimes; (3) a portion of the criminal plea hearing; and (4) the judgment of conviction. The disciplinary complaint, however, alleged only a single count of misconduct against Attorney Mirza, which stated as follows:

> By engaging in a course of conduct toward SES that led to him
> pleading guilty to felony Stalking (Wis. Stat. § 940.32(2)) and

3

misdemeanor Criminal Trespass to Dwelling (Wis. Stat. § 943.14 (2)), both with the domestic abuse modifier (Wis. Stat. § 968.075(1)(a)), and also with charges of:

a. Count Two — Misdemeanor Battery (Domestic Abuse),

b. Count Three — Felony False Imprisonment, (Domestic Abuse),

c. Count Four — Felony Intimidation of a Victim, (Domestic Abuse),

d. Count Six — Misdemeanor Disorderly Conduct, (Domestic Abuse),

e. Count Seven — Misdemeanor Battery, (Domestic Abuse),

f. Count Eight — Felony False Imprisonment, (Domestic Abuse),

g. Count Nine — Misdemeanor Disorderly Conduct, (Domestic Abuse),

h. Count Ten — Misdemeanor Disorderly Conduct, (Domestic Abuse), and

i. Count Eleven — Misdemeanor Disorderly Conduct, (Domestic Abuse)

being read-in, whereby they were dismissed but Mirza agreed that they could be considered by the Circuit Court for purposes of sentencing, Mirza violated SCR 20:8.4(b).

¶11    The rule of professional conduct cited by the OLR, SCR 20:8.4(b), provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The OLR asked the court "to impose an appropriate level of discipline" for Attorney Mirza's alleged violation of this rule.

¶12    On January 19, 2024, Attorney Mirza filed an answer to the OLR's complaint. In it, he denied the OLR's allegation that he engaged in a criminal course of conduct directed at S.E.S. between June 2018 and June 2020. He admitted the occurrence of the key events in his criminal case—the filing of the criminal complaint and information and their subsequent amendment; the entry and acceptance of his plea; his subsequent, unsuccessful attempts to withdraw his plea; and his sentencing. He denied violating SCR 20:8.4(b). He raised various affirmative defenses, including that the OLR's disciplinary complaint was the result of a "wrongful conviction."

¶13    This court appointed Referee Charles H. Barr to act as the referee in this matter. The referee held an evidentiary hearing in March 2024. The OLR called Attorney Mirza as its only witness. Attorney Mirza did not present any witnesses regarding the facts underlying his criminal conviction. He called six witnesses to testify about his character. The OLR argued for a 30-month suspension of Attorney Mirza's law license. Attorney Mirza argued for a six-month suspension.

¶14    In his initial report filed in April 2024, the referee appeared to adopt as fact the entire course of conduct alleged in the amended criminal complaint against Attorney Mirza, i.e., all acts underlying both his two counts of conviction (stalking and trespassing) and his nine read-in charges (two counts of misdemeanor battery, two counts of felony false imprisonment, one count of felony intimidation of a victim, and four counts of misdemeanor disorderly conduct).  In particular, citing to both the OLR's complaint and the amended criminal complaint it attached as "Exhibit A," the referee provided the following chronological summary of what he termed "Attorney Mirza's conduct, as described in the eleven counts of the amended criminal complaint":

• Summer 2018: downloaded an app on S.E.S.'s phone that allowed him to track her location and incoming and outgoing text messages. (Complaint, ¶6 at 2 and Ex. A at 4.)

• October 20, 2019: twice forcibly entered or attempted to enter a locked room where S.E.S. and their children were sleeping. (*Id.*, Ex. A at 15-16.)

• January-February 2020: showed up at public places and attempted to intimidate men who were socializing with S.E.S.

not to date her, stating that he was a lawyer in Milwaukee, and at least on one occasion forcibly grabbed S.E.S.; texted vulgar statements to S.E.S. (*Id.*, Ex. A at 5-6.)

• February 11, 2020: forcibly tried to remove S.E.S. from her vehicle while calling her vile names, and threw his shoes at the vehicle. (*Id.*, Ex. A at 13-14.)

• March 8, 2020: telephoned S.E.S. with threats of violence and vulgar statements. (*Id.*, Ex. A at 6.)

• Between March 20 and 25, 2020: struck S.E.S. in the mouth, grabbed her wrists, threatened to break her arms, physically restrained her from leaving, told her not to call police or they would both get in trouble, pinned her down, and forced her to repeat vulgar statements. (*Id.*, Ex. A at 6-7.)

• March 30, 2020: entered S.E.S.'s home twice without her consent; exposed his genitals and threatened to "tag team" S.E.S. with another male who was present; sent S.E.S. vulgar texts; called her vulgar names in the presence of others; and flipped her over the back of a couch, causing her to land on her head and neck and resulting in severe headaches and neck pain. (*Id.*, Ex. A at 7-8.)

• April 13, 2020: withheld children from S.E.S. unless she had sex with him; pinned her down by her arms, again threatened to break her arms, prevented her from leaving his home, and forced her to stay the night. (*Id.*, Ex. A at 8.)

• April 30, 2020: texted degrading messages and inappropriate photographs of S.E.S. to their son's phone. (*Id.*, Ex. A at 9.)

• June 15, 2020: phoned S.E.S.'s brother and screamed at him, calling S.E.S. vulgar names and threatening violence against her. (*Id.*, Ex. A at 10.)

• July 17, 2020: texted S.E.S.'s aunt, calling S.E.S. derogatory names, attempting to shame her family for allowing her to

seek divorce, and making derogatory statements about S.E.S.'s private life. (*Id.*)

• July 18, 2020: walked around S.E.S.'s home looking into windows late at night without her knowledge or consent. (*Id.,* Ex. A at 11.)

¶15    Ultimately, the referee concluded that the OLR had proven a violation of SCR 20:8.4(b) and that a one-year license suspension, retroactive to the October 30, 2023 summary suspension date, would be appropriate.

¶16    The OLR appealed, challenging the referee's recommended one-year, retroactively imposed sanction as insufficient. In its appellate briefing to this court, the OLR submitted that the referee properly found that Attorney Mirza committed the entire course of conduct alleged in the amended criminal complaint against him; i.e., all acts underlying both his two counts of conviction (stalking and trespassing) and his nine read-in charges (two counts of misdemeanor battery, two counts of felony false imprisonment, one count of felony intimidation of a victim, and four counts of misdemeanor disorderly conduct). Thus, the OLR argued, it was established for purposes of this case that

> [o]ver a two-year period, Mirza tracked and threatened his wife. He forcibly grabbed and restrained her, flipped her over a couch, struck her in the mouth, pinned her down, threw objects at her and threatened to break her arms. He forcibly entered locked rooms where she and their children were asleep and entered her home without her consent. He intimidated her and her social friends. He called her vulgar names to her face and to her family and their children. He texted degrading messages about her and inappropriate photographs of her to their son's phone. He threatened her and her family in vulgar tirades. And he walked around her home at night, looking into her windows, without her knowledge. This amounts to a two-year period during which Mirza repeatedly victimized his wife in some of the most terrifying means possible.

Given what it called these "egregious and reprehensible" actions, the OLR insisted this court needed to impose a 30-month suspension.

¶17 In his appellate briefing, Attorney Mirza defended the referee's report and recommendation for a one-year suspension retroactive to October 30, 2023. In doing so, Attorney Mirza took seemingly conflicting positions regarding the accuracy and scope of the referee's factual findings. On the one hand, Attorney Mirza wrote that he did not challenge the referee's factual findings concerning his conduct—which, as noted above, appeared to adopt as fact the entire course of conduct alleged in the amended criminal complaint underlying Attorney Mirza's counts of conviction and his read-in charges. On the other hand, Attorney Mirza took care to note that he never directly admitted the read-in charges, and he suggested that at least some of the allegations underlying them are inaccurate. *See generally Robinson v. City of West Allis*, 2000 WI 126, ¶42, 239 Wis. 2d 595, 619 N.W.2d 692 (noting that although read-in charges have a preclusive effect of barring future prosecution of the read-in charges, "they are not otherwise treated as adjudications of guilt").

¶18 On December 11, 2024, after reviewing the parties' appellate briefing, this court ordered the parties to file briefs that the court hoped would clarify what facts we could properly consider as forming the basis for the claimed SCR 20:8.4(b) violation.

¶19 The parties' briefs did not sufficiently clarify matters, so in a February 2025 decision, we vacated the referee's initial report and remanded the matter for further proceedings. *See In re Mirza*, 415 Wis. 2d 209, ¶25. Discussing Attorney Mirza's two counts of conviction, we noted that, pursuant to SCR 22.20(5),[2] the OLR was not required to prove Attorney Mirza's commission of the acts underlying his stalking and trespass convictions. *Id.* We noted, however, that it was unclear what specific acts formed the basis of Attorney Mirza's stalking conviction—the amended criminal complaint was unclear on this point, and there was no agreement between the parties on this point, either. *See id.*, ¶19 n.2. Turning our attention to Attorney Mirza's nine read-in charges, we explained that because they did not result in convictions, the OLR needed to prove the acts underlying them to a clear, satisfactory, and convincing degree—and if the

---

[2] SCR 22.20(5) states that "[i]n a proceeding based on an attorney's having been found guilty or convicted of a crime, a certified copy of the record in the proceeding or the certificate of conviction shall be conclusive evidence of the attorney's guilt of the crime of which found guilty or convicted."

OLR was unable to do so, we would not consider them in our disciplinary determination. *Id.*, ¶¶25-28.

¶20 In issuing this decision, we had hoped the parties and the referee would specifically identify for us on remand:

- those criminal acts that formed the basis of Attorney Mirza's stalking and trespass convictions and may be conclusively presumed to have occurred by virtue of SCR 22.20(5); and

- as to all other criminal acts alleged in the amended criminal complaint in support of the nine read-in charges, those criminal acts that the OLR proved by clear, satisfactory, and convincing evidence.

In order to wipe the slate clean of any past missteps, we vacated the referee's initial report, making clear that the referee had "discretion to reopen the record to allow both parties to present any additional evidence necessary to permit [him] to make adequate findings." *Id.*, ¶29.

¶21 It appears from the record that the OLR and Attorney Mirza attempted to negotiate a stipulation regarding his conduct, but made so little progress that the referee calendared an evidentiary hearing, scheduled to last up to two days, for mid-September 2025. Attorney Mirza then retained counsel. Both sides filed witness lists; the OLR listed ten potential witnesses, and Attorney Mirza listed fifteen.

¶22 On September 2, 2025, in the hope of avoiding the scheduled evidentiary hearing, the OLR and Attorney Mirza filed a stipulation. It provides in pertinent part:

> [F]or purposes of this proceeding only and not for purposes of any proceedings in any subsequent action, the parties stipulate that Mirza denies the accuracy of many of the following facts but stipulates that, despite his denial of the accuracy of those facts, OLR could prove each of the following facts by evidence which would meet the applicable clear, satisfactory and convincing standard:
>
> 1. Throughout the period 2018-2020, Mirza used vulgar and abusive language toward his then wife, SES, in

person and through text messages and phone calls. The couple's minor children were exposed to some of those vulgar communications.

2.  On March 8, 2018, Mirza hung a used shooting range target with bullet holes in the couple's garage on the side that SES traditionally parked. A photograph of that target accompanies this stipulation as Exhibit A and is made part of the record. SES perceived the target as a threat.[3]

3.  On the morning of March 30, 2020, Mirza entered the dwelling of SES without her consent under circumstances tending to create or provoke a breach of the peace. Mirza observed SES with another man and asked the man if they should "tag team" SES in a sexual threesome.

4.  Later on March 30, 2020, while SES was sitting on his lap, Mirza abruptly stood up, flipping SES over the armrest of the couch and causing her to slam her head and neck into the floor.

5.  On June 15, 2020, SES's brother surreptitiously recorded a portion of a telephone call between himself and Mirza during which Mirza made vulgar comments about and physical threats regarding SES.

6.  Shortly after midnight on July 18, 2020, Mirza walked around SES's residence, peering into her windows without her knowledge or consent.

7.  At least one of the acts described in the preceding paragraphs caused SES to fear for her safety.

8.  Mirza's plea forms . . . included jury instructions for stalking wherein the specific types of acts

---

[3] In his post-remand report, the referee notes, correctly, that the amended criminal complaint against Attorney Mirza does not include allegations regarding this incident. In addition, it should be noted that the OLR has not charged this conduct as a separate violation of the Rules of Professional Conduct.

falling under Wis. Stat. § 940.32(1) (a) (1-10) and supported by the evidence were identified as sub (a)(1) [maintaining a visual or physical proximity to the victim], (2) [approaching or confronting the victim], (4) [appearing at the victim's home or contacting the victim's neighbors], and (7) [sending to the victim any physical or electronic material or contacting the victim by any means, including any message, comment, or other content posted on any Internet site or web application].[4]

(Footnotes omitted.)

¶23   In light of this stipulation by the parties, the referee did not hold an evidentiary hearing. He also did not require the parties to specify which of the stipulated facts were part of the criminal stalking conviction. Rather, in a post-remand report filed in October 2025, the referee simply accepted the factual stipulations quoted above and made no other findings regarding Attorney Mirza's underlying acts of misconduct. The referee determined that the facts contained in the stipulation established a violation of SCR 20:8.4(b). As he did in his initial report, the referee recommended that a one-year suspension, retroactive to the court's October 30, 2023 summary suspension order, would be sufficient discipline. The referee's post-remand report is now before us for review.

¶24   We note, as a general matter, that the parties and the referee did not accomplish on remand what we had expected. *See* ¶¶19-20, supra. Instead, the parties entered into an unusually austere stipulation that the referee then adopted, thereby confining the case to a distinctly limited and vaguely described set of facts. Despite the multitude of acts by Attorney Mirza alleged in the amended criminal complaint and, by extension, the OLR's disciplinary complaint, the stipulation that now supports the SCR

---

[4] The remainder of the parties' stipulation consists of a lengthy quotation from the sentencing transcript, as well as joint requests by the parties: (1) that any suspension period imposed by this court be imposed retroactive to the October 30, 2023 date of Attorney Mirza's summary suspension; and (2) that if this court imposes a suspension "equal to or less than the suspension period already served, Attorney Mirza should be immediately eligible for reinstatement to the practice of law."

20:8.4(b) violation describes only five acts that he committed, followed by a broad-brush statement that he used "vulgar and abusive" language toward S.E.S. over a two-year period. The stipulation then sets forth categories of behavior that the parties agree fall within the stalking statute, without specifying which specific acts by Attorney Mirza fall within these categories. Finally, in terms reminiscent of a no-contest plea, the stipulation provides that Attorney Mirza "denies the accuracy of many" of the facts set forth in the stipulation, but agrees that that the OLR could prove them under the applicable clear, satisfactory, and convincing standard. *See* SCR 22.16(5). Questions about this barebones and vaguely worded stipulation abound: What facts in the stipulation does Attorney Mirza now "den[y] the accuracy of"? How does his denial of their "accuracy" comport with his criminal plea agreement, which included a *guilty* plea to stalking and trespassing charges and an agreement to the reading in of nine others? What was the frequency and type of "vulgar and abusive language" that Attorney Mirza used toward S.E.S. over a two-year period? What specific acts did Attorney Mirza commit that constituted the two-year course of stalking behavior to which he pled criminally guilty? This list is by no means inclusive of all the questions the parties' stipulation leaves open.

¶25    The parties' meager stipulation, and the referee's adoption of it without summoning the parties to flesh it out, leave the court with a difficult job. We strive to mete out comparable sanctions for comparable misconduct. Doing so requires thorough factual development—either by a comprehensive stipulation pursuant to SCR 22.12 or by comprehensive fact-finding by a referee—related to both the misconduct determination and matters in aggravation or mitigation of the disciplinary sanction to be imposed. We do not have that here; a full and detailed accounting of Attorney Mirza's conduct still eludes us. Nor do we have any guidance from the parties related to the current posture of this case. The OLR has been notably silent regarding the referee's post-remand report even though it contains the same recommendation for a one-year suspension that the OLR initially deemed worthy of appeal.

¶26    While it is tempting to remand this case again for clarification, we decline to do so—we've done so already, and at this point we are skeptical that repeating this exercise would lead to any different result. We accept that the limited set of facts before us constitutes the universe of facts for this case, and we proceed with our review of the referee's post-remand report pursuant to SCR 22.17(2).

¶27 In reviewing the referee's post-remand report, we are required to affirm the referee's findings of fact unless they are clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. *In re Disciplinary Proceedings Against Inglimo*, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶28 Neither party has appealed from the referee's post-remand report, and thus there is no claim that any of his factual findings are clearly erroneous. As such, we accept them.

¶29 We also agree with the referee's legal conclusion that Attorney Mirza violated SCR 20:8.4(b). Although the facts set forth in the stipulation address only a portion of the acts alleged in the amended criminal complaint and, by extension, the OLR's disciplinary complaint, these facts sufficiently demonstrate that Attorney Mirza engaged in criminal behavior. Moreover, the violent, abusive, and aberrant nature of this behavior demonstrates that Attorney Mirza lacks the character and integrity necessary to the practice of law. We are particularly concerned that Attorney Mirza's abusive conduct went on for years. Had he committed these criminal acts against a stranger, he would likely face revocation. His actions are in no way mitigated because his victim was his wife. His conduct is therefore unquestionably of a type that "is so revealing of character defects, and so undermines public confidence in the legal profession, that it necessarily reflects adversely on [his] fitness as a lawyer." *In re Disciplinary Proceeding Against Johns*, 2014 WI 32, ¶38, 353 Wis. 2d 746, 847 N.W.2d 179. Accordingly, we adopt the referee's recommendation and hold that Attorney Mirza violated SCR 20:8.4(b).

¶30 The central issue for this court is whether a suspension greater than the one-year, retroactively imposed suspension recommended by the referee is in order. We conclude the answer is "yes." In answering this question, we may look to prior case law, the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards), and aggravating and mitigating factors. *See In re Disciplinary Proceedings Against DeLadurantey*, 2023 WI 17, ¶52, 406 Wis. 2d 62, 985 N.W.2d 788.

¶31 Turning first to our own prior case law, we note that the referee viewed this case as falling somewhere between the decisions of *In*

*re Disciplinary Proceedings Against Netzer*, 2014 WI 7, 352 Wis. 2d 310, 841 N.W.2d 820 and *In re Disciplinary Proceedings Against Meyer*, 2022 WI 39, 401 Wis. 2d 732, 975 N.W.2d 229. In *Netzer*, this court imposed a 90-day suspension for an attorney's SCR 20:8.4(b) violation based on behavior that culminated in two convictions for violating a harassment injunction and other charges being dismissed and read-in. Attorney Netzer's behavior consisted of various unwelcome attempts to contact his ex-girlfriend, despite a no-contact order, by sending her emails and a postcard, placing newspaper ads directed to her, and coming within her proximity. In *Meyer*, this court revoked an attorney's license for his violations of SCR 20:8.4(b) and (c). Attorney Meyer stood convicted of one felony count of threatening to communicate derogatory information and one felony count of stalking. The undisputed facts showed that Attorney Meyer punched his former girlfriend in the face on one occasion; grabbed her by the back of the head and pushed her to the ground on another; directed scores of unwelcome e-mail messages and telephone calls to her; repeatedly used his position as an attorney to intimidate and threaten her; repeatedly told her that he was insulated from legal consequences because of his position as a criminal defense lawyer; and fabricated character reference letters submitted to the district attorney's office during plea negotiations in his criminal case. The referee concluded that Attorney Mirza's behavior is "[a]rguably . . . closer to Attorney Meyer's conduct than to Attorney Netzer's though it is not very close to either."

¶32 We respectfully disagree. Although it is difficult for us to compare the conduct discussed in *Netzer* and *Meyer* to that of Attorney Mirza given the limited facts before us, what we *do* know convinces us that this case falls within *Meyer*'s ambit. We know from the stipulation that Attorney Mirza directed "vulgar and abusive language" toward S.E.S. over a two-year period, some of which the couple's minor children were exposed to; that he entered S.E.S.'s home without consent and suggested that he and S.E.S.'s male companion "tag team" S.E.S. in a sexual threesome; that he injured S.E.S. by flipping her over the armrest of a couch; that he peered into S.E.S.'s house windows in the middle of the night; and that S.E.S.'s brother recorded a telephone call with Attorney Mirza during which Mirza "made vulgar comments about and physical threats regarding" S.E.S. Regarding this last event, a portion of the recorded call is transcribed in the amended criminal complaint, which, as noted above, appears in the record before us as "Exhibit A" to the disciplinary complaint. Attorney Mirza does not dispute the accuracy of the transcription contained in the amended criminal complaint, which quotes him as saying:

> That's how much of a fucking whore she is! You get a fucking
> handle on your fucking dumb sister because she is affecting
> my kids and at some point I am going to cut her throat in a
> way that's so FUCKING SPECTACULAR that you would
> think September 11th is a fucking joke. That's how fucking
> angry I am. Don't fuck with me is my point because I am that
> fucking psychotically upset about this and I am amazed that
> I am able to hold my fucking breath for this long, that is how
> fucking angry I am!

The amended criminal complaint also quotes Attorney Mirza as stating during the recorded call that he wants to "punch [S.E.S.] to death." Given all of the above facts, we wholeheartedly agree with the referee's observation that "in terms of his relationship with S.E.S., [Attorney Mirza] was completely and dangerously out of control for a period of two years."

¶33   We cannot square this observation by the referee with his subsequent determination that Attorney Mirza's misconduct merits only a *fraction* of the discipline imposed in *Meyer*, i.e., a one-year retroactive suspension that would expire upon adoption of this decision, as compared to the revocation imposed in *Meyer*. Although disciplinary cases almost never match exactly, the *Meyer* case remains instructively close. Like Attorney Mirza, Attorney Meyer was convicted of felony stalking after engaging in a prolonged series of belligerent and threatening acts toward a former intimate partner. Both attorneys also engaged in physical violence against their former intimate partners. While there are certainly some factual differences between the cases, the differences are not sufficient to compel us to distinguish the gravity of Attorney Meyers' abusive conduct toward his ex-girlfriend from the gravity of Attorney Mirza's abusive conduct toward S.E.S. Both are egregious courses of conduct that show a lack of character to practice law, period. We therefore conclude that the baseline sanction for Attorney Mirza's conduct is the same as that imposed in *Meyer*: revocation. This is the starting point against which we will weigh mitigating and aggravating factors. *See generally* ABA Standards 9.22, 9.32.

¶34   In the referee's view, many mitigating factors weighed heavily in Attorney Mirza's favor. In particular, the referee noted that Attorney Mirza has no disciplinary record; that his misconduct lacked a dishonest or selfish motive; that he was experiencing personal and emotional problems at the time of the misconduct for which he subsequently sought treatment; that he had a cooperative attitude toward

this proceeding; that he is relatively inexperienced in the practice of law; that he has a good professional character and reputation according to the witnesses who testified on his behalf; that he has received penalties beyond disciplinary sanctions for his misconduct; that he has expressed and demonstrated remorse; and that his misconduct is now several years in the past. *See generally* ABA Standard 9.32.

¶35 We respectfully disagree with the referee's weighing of these factors. While we agree with the referee that Attorney Mirza cooperated with the disciplinary process and that he has been criminally penalized for his wrongdoing, the other mitigating factors cited by the referee carry no particular weight with us. For starters, it is true, as the referee noted, that Attorney Mirza does not have a prior disciplinary record. But it also true that he commenced his two-year course of misconduct in 2018, just one year after his admission to the bar in 2017. Given the short period of time between his admission and his misconduct, his absence of a prior disciplinary record factors little in our analysis. Unlike the referee, we decline to categorize Attorney Mirza's sustained course of abusive, controlling behavior toward S.E.S. as lacking a selfish motivation; his conduct demonstrated an intent to control an intimate partner through violence and intimidation, which is inherently selfish. While Attorney Mirza claimed at times during this matter that he suffers from various mental health issues worsened by difficult personal circumstances, he failed to show how they rendered him unable to conform his conduct with the law and our professional rules, so this, too, fails to carry any weight as a mitigating factor. *See In re Disciplinary Proceedings Against Davig Huesmann*, 2018 WI 114, ¶40, 385 Wis. 2d 49, 922 N.W.2d 498 (declining to consider lawyer's personal and substance abuse problems as mitigating factors absent a "showing in [the] record that those problems were the cause of [the] professional misconduct"). And although Attorney Mirza is a relatively inexperienced lawyer, we find this factor irrelevant; Attorney Mirza's legal inexperience did not cause him to engage in domestic abuse.

¶36 We also disagree with the significant weight that the referee appears to have assigned to Attorney Mirza's expressions of remorse during this proceeding. Although we do not overturn the referee's findings about these expressions, we find it difficult to extend Attorney Mirza much credit for remorse after he insisted in these proceedings that, despite his guilty plea, he committed no crime, and that he "denies the accuracy of many" of the facts to which he recently stipulated. Attorney Mirza is certainly free to take these positions, but he cannot do so and

simultaneously expect this court to give him much credit for his level of remorse and acceptance of responsibility.

¶37     We turn next to potential aggravating factors. *See generally* ABA Standard 9.22. Several are present. As noted above, Attorney Mirza's behavior was inherently selfish. He displayed a pattern of misconduct over a two-year period. His conduct was not just a violation of professional ethics; it was illegal. Finally, Attorney Mirza does not seem to fully acknowledge the wrongful nature of his conduct. We note in this regard that in his briefing to this court, he seized on certain comments by the sentencing court to suggest that his actions were not all that uncommon in the context of an intimate relationship gone awry. This argument gives us concern that Attorney Mirza has not come to grips with the scale of his wrongdoing.[5]

¶38     Although there is no mathematic formula for weighing these factors, we conclude that the aggravating factors in play outweigh the mitigating factors in play, and thus the appropriate sanction for Attorney Mirza's misconduct remains revocation. Consistent with past disciplinary matters that were commenced following an SCR 22.20 summary suspension, we will set the commencement date of the revocation for October 30, 2023, the effective date of the underlying SCR 22.20 summary suspension. *See, e.g., In re Disciplinary Proceedings Against Dudas*, 2021 WI 5, ¶14, 395 Wis. 2d 345, 953 N.W.2d 870. We choose not to impose conditions at this time on any subsequent petition that Attorney Mirza would need to file for reinstatement of his Wisconsin law license, preferring to deal with that issue at such time as it is presented to us.

¶39     Finally, we turn to the issue of costs and restitution. As noted earlier, the costs total $24,056.22 as of October 15, 2025. The referee has recommended the imposition of full costs. Previously in this matter,

---

[5] Although this incident was not included in the amended criminal complaint against Attorney Mirza nor, by extension, in the OLR's disciplinary complaint against him, we note as an aggravating factor the stipulated fact that Attorney Mirza hung a used shooting range target with bullet holes in the couple's garage on the side that S.E.S. traditionally parked. In no way is an act like this a typical or appropriate response to the unwinding of a relationship, contrary to Attorney Mirza's intimation.

Per Curiam

Attorney Mirza filed a document submitting that the court should impose no costs or, at most, 20% of the stated costs. Aside from meritless objections to the timing of the OLR's costs submissions and the referee's costs recommendation, Attorney Mirza claimed the costs should be reduced because he told the OLR before the March 2024 disciplinary hearing that he would stipulate to a one-year retroactively imposed suspension—the result the referee ultimately recommended, as opposed to the OLR's requested 30-month suspension. We are not persuaded. We have previously stated our unwillingness to do what Attorney Mirza requests: "to undertake the task of evaluating the parties' efforts to reach . . . a stipulation; i.e., to review the history of the parties' case discussions in order to determine who was willing to stipulate to what, when, and at what consequence; whether a stipulated outcome was reasonably achievable; and how much the SCR 22.24 costs totaled at the relevant point(s) in time." *In re Disciplinary Proceedings Against Kratz*, 2014 WI 31, ¶60, 353 Wis. 2d 696, 851 N.W.2d 219. And in any event, as explained above, we believe that the one-year, retroactively imposed suspension recommended by Attorney Mirza and the referee is insufficient. We therefore see no reason to depart from our general policy of imposing full costs on the disciplined lawyer. SCR 22.24(1m). As for restitution, none was sought and none is ordered.

¶40    IT IS ORDERED that the license of Osman A. Mirza to practice law in Wisconsin is revoked, effective October 30, 2023.

¶41    IT IS FURTHER ORDERED that within 60 days of the date of this order, Osman A. Mirza shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $24,056.22.

¶42    IT IS FURTHER ORDERED that Osman A. Mirza shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.

IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
ATTORNEY OSMAN A. MIRZA
JUSTICE HAGEDORN, dissenting

BRIAN K. HAGEDORN, J., with whom ANNETTE KINGSLAND ZIEGLER and REBECCA GRASSL BRADLEY, JJ., join, dissenting.

¶43 Attorney Osman Mirza was convicted of one count of felony stalking and one count of misdemeanor criminal trespass to dwelling, both as acts of domestic abuse. This court rightly concludes that his abhorrent actions constitute a violation of SCR 20:8.4(b), which states: "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." I agree with the court that Mirza's conduct is worthy of a significant sanction. The referee recommended a one-year suspension, and OLR sought a 30-month suspension. The court goes much farther and revokes Mirza's license altogether.

¶44 My concern is less with the specific length of the suspension than the apparent rationale for the decision. It appears the court may be treating this case differently than other comparable cases because it involved domestic abuse. But the rule we are applying requires us to tailor discipline to how the offense reflects on the fitness of the individual as a lawyer. Our past cases with this kind of sanction have involved a tie between the crime and the practice of law—for example, using one's position as an attorney to take advantage of someone else. Thus, this sanction appears inconsistent with how we have dealt with cases in the past, raising concerns about whether this court is being evenhanded in its dispensing of attorney discipline.

¶45 To be sure, domestic abuse is a scourge worthy of condemnation. Mirza's actions reflect poorly on his integrity, and a long suspension is appropriate. But I respectfully dissent from the court's decision to revoke Mirza's license altogether.